**VERTEX DISTRIBUTING, INC.,**
**Plaintiff-Appellant,**

v.

**FALCON FOAM PLASTICS, INC., Falcon Manufacturing of California, Inc., James Allen, and Michael Allen, Defendants-Appellees.**

**No. 81–5652.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1982.

Decided Oct. 7, 1982.

Michael D. Harris, Poms, Smith, Lande & Rose, Los Angeles, Cal., for plaintiff-appellant.

Margot A. Metzner, Hufstedler, Miller, Carlson & Beardsley, Los Angeles, Cal., for defendants-appellees.

Before GOODWIN and NELSON, Circuit Judges, and SMITH,* District Judge.

NELSON, Circuit Judge:

Vertex Distributing, Inc. ("Vertex"), filed applications in the district court, asking that defendants Falcon Foam Plastics, Inc., Falcon Manufacturing of California, Inc., James Allen, and Michael Allen ("defendants") be held in civil contempt for violating the terms of a consent judgment. Vertex now appeals the district court's denial of those applications and the district court's clarification of the original consent judgment. We conclude that the district court did not abuse its discretion in denying the applications for civil contempt and that it correctly interpreted the consent judgment. We therefore affirm.

## FACTS AND PROCEEDINGS BELOW

Vertex owns the federally-registered trademark "Falcon-Foam." In February, 1978, Vertex filed a trademark infringement claim against defendants over their use of "Falcon;" in October 1978, a consent judgment was entered, that:

(1) enjoined defendants from using "Falcon-Foam or Falcon Foam," or colorable imitations of those terms;

(2) permitted defendants to use "Falcon Foam Plastics, Inc." as their corporate name "for legal reasons only," and prohibited the use of that name for commercial or publicity purposes;

(3) permitted defendants to do business with a trade name that includes the word "Falcon," so long as a falcon bird perched on the "F" of Falcon was included "wherever possible and practical." [1]

---

* Honorable Russell E. Smith, Senior United States District Judge, District of Montana, sitting by designation.

1. The full text of the consent judgment provided as follows:

This cause having come on for hearing, and the Court having been fully advised of the premises, by and with the consent of both parties on the basis that the matters in dispute have been amicably resolved by them, it is hereby ORDERED, ADJUDGED and DECREED:

1. This Court has jurisdiction over the subject matter of this action and the parties hereto.

2. Plaintiff's United States registration of the trademark FALCON–FOAM, Registration No. 869,913, issued May 27, 1969, is valid and subsisting and is owned by plaintiff.

3. Defendants, their officers, agents, servants, and employees, and all others holding by, through or under defendants, or in active concert or participation with defendants, are hereby permanently enjoined and restrained, effective as of the date of entry of this Final Judgment, from:

using in any way the terms FALCON–FOAM or FALCON FOAM, or any colorable imitations thereof in connection with the sale, offering for sale, distribution, or advertising of any foamed plastic products which use is likely to cause confusion or mistake or to deceive purchasers as to the source or origin of such products.

4. Notwithstanding the foregoing injunction:

(a) defendants may retain the corporate name of defendant, FALCON FOAM PLASTICS, INC., for the name of the corporation for legal reasons only, using it only as reasonably necessary in matters wherein the use of the actual corporate name is required and not for commercial or publicity purposes, and in particular the corporate name FALCON FOAM PLASTICS, INC. is not to be listed in the Telephone Directory White Pages listings;

(b) defendants may do business using a trade name which includes the word FALCON providing, however, that when defendants use a trade name incorporating FALCON therein, defendants shall include a falcon bird perched on the "F" of FALCON wherever possible and practical and, in particular, on signs, delivery vehicle markings, letterheads, packaging, product markings, advertising materials, business cards, and Telephone Directory Yellow Pages listings;

(c) defendants may have six months from the date of this Final Judgment during which to use present supplies of printed materials having FALCON FOAM PLASTICS, INC. printed thereon. Defendants

In April, 1981, Vertex filed an application for an order holding defendants in civil contempt for violations of the consent judgment. Vertex requested discovery regarding the extent of the violations, an accounting for damages, and other relief.

As evidence of alleged violations, Vertex submitted three small ads from three 1980 Yellow Pages Telephone Directories. These ads contained the single word "Falcon," prominently displayed in graphic block letters, and did *not* include a bird perched on the "F." Vertex also submitted a one-line name-address-telephone number listing that did not display a falcon bird.

In response, defendants submitted evidence of their redesigned logo, which contained the perched bird. This logo appeared on letterheads, envelopes, signs, and delivery vehicles. The defendants submitted further evidence that all large Yellow Pages ads *did* contain a picture of a perched bird; they argued that this picture was omitted only from small ads and one-line listings, where it had not been "possible or practical" to include the bird.

While the district court's decision on the first application for contempt was still pending, Vertex filed a second application, submitting as evidence two one-line listings for "Falcon Foam Plastics, Inc." from the 1980 Canoga Park-Reseda-Agoura Yellow Pages Directory. Defendants then demonstrated that the two listings in question had been changed before the application for contempt was filed and that current telephone directories contained listings only for "Falcon."

In June 1981, the district court determined that Vertex had not met its burden of providing by "clear and convincing evidence" that the consent judgment of 1978 was violated. Both applications for orders of contempt were denied.[2] Vertex then filed a timely appeal.

### ISSUES

This appeal raises the following issues:

I. Did the district court abuse its discretion in determining that Vertex failed to show by clear and convincing evidence that defendants had violated the consent judgment?

shall order no additional such materials and shall undertake no further advertising of any goods bearing or associated with the name FALCON FOAM PLASTICS, INC. or undertake any telephone or trade directory listing under the name FALCON FOAM PLASTICS, INC.

5. Neither party shall authorize or issue any press release or publicity relating to the entry of this Final Judgment or the settlement of the above action and this Final Judgment shall not be used affirmatively by either party for publicity or commercial advantage.

6. Defendants' Counterclaims are hereby dismissed with prejudice.

7. Each party to this action shall bear its own costs and attorneys' fees.

Final Judgment, October 27, 1978.

2. The order denying Vertex's applications for contempt provided in pertinent part as follows:

On April 13, 1981, plaintiff first applied to this Court for an order that defendants are in contempt of the stipulated Judgmen [sic] entered by this Court on October 30, 1978 in this action. This first application came on regularly to be heard before this Court on June 8, 1981. On June 13, 1981, plaintiff then filed a second application for an order re contempt. After careful consideration of

both of these applications, and the opposition thereto, the Court hereby Orders as follows:

(1) The applications of plaintiff for an order holding that defendants are in contempt of the stipulated Judgment entered October 30, 1978 are hereby denied.

(2) Defendants shall include a picture of at least one falcon bird in each of their telephone directory advertisements as soon as it is feasible for them to do so.

(3) Defendants need not include the picture of a falcon bird in telephone directory listings utilizing only "name-address-phone number" listings.

(4) The defendants are not required to use the word "Falcon" only as part of a longer trade name which includes more than the single word "Falcon." .

(5) Defendants are not in contempt of this Court's prior order because of present listings in either the Canoga Park Yellow Pages or the Plastics West Directory. The Court finds that defendants have made every reasonable effort to bring these two listings into full compliance with the prior stipulated Judgment in this case.

IT IS SO ORDERED.

Order Denying Plaintiff's Applications for an Order Re Contempt, June 25, 1981.

A. Did the district court abuse its discretion in refusing to hold defendants in contempt for their use of the one-word name "Falcon"?

B. Did the district court abuse its discretion by not holding defendants in contempt for their use of the name "Falcon," without an accompanying picture of a bird perched on the "F," in small Yellow Pages advertisements and listings?

C. Did the district court abuse its discretion by refusing to hold defendants in contempt for their failure to prevent telephone directory listings from appearing under the name "Falcon Foam Plastics, Inc."?

II. Did the district court err in not holding defendants in contempt once it held that they were required to change their advertisements to comply with the consent judgment?

III. Did the district court err in not permitting Vertex to conduct further discovery?

IV. Did the district court err in interpreting the consent judgment as permitting use of the single word "Falcon" as defendants' trade name?

## DISCUSSION

*I. Did the district court abuse its discretion in determining that Vertex failed to show by clear and convincing evidence that defendants had violated the consent judgment?*

■ We apply well-settled law. In a civil contempt proceeding, the contempt must be proved by clear and convincing evidence. *Battaglia v. United States,* 653 F.2d 419, 422 (9th Cir. 1981); *United States v. Powers,* 629 F.2d 619, 626 n.6 (9th Cir. 1980). This requires more than does the preponderance of the evidence standard applicable to most civil cases. *Battaglia,* 653 F.2d at 422; *Powers,* 629 F.2d at 626 n.6.

■ Where the language of a consent judgment is too vague, it cannot be enforced; to do so would be an invalid exercise of judicial authority. *International*

*Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Association,* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236, 245 (1967) (reversing a civil contempt judgment founded upon a decree too vague to be understood); *see United States v. Joyce,* 498 F.2d 592, 596 (7th Cir. 1974) (reversing a criminal contempt judgment because terms of a court order should be clear and specific and leave no doubt or uncertainty in the minds of those to whom it is addressed). Thus, if a defendant's action "appears to be based on a good faith and reasonable interpretation of [the court's order]," he should not be held in contempt. *Rinehart v. Brewer,* 483 F.Supp. 165, 171 (S.D.Iowa 1980).

■ We review the district court's decision declining to hold defendants in contempt under the abuse of discretion standard. *Washington-Baltimore Newspaper Guild Local 35 v. Washington Post Co.,* 626 F.2d 1029, 1031 (D.C.Cir.1980). *See Powers,* 629 F.2d at 624 (district court decision in setting punishment for contempt reviewed for abuse of discretion).

■ We do not here determine whether a trademark infringement occurred, but rather whether the district court abused its discretion in determining that defendants had not violated the consent judgment. Furthermore, our function here is not that of the patent office when it decides problems of confusing similarity in connection with applications for trademark registration. Thus cases such as *King-Kup Candies, Inc. v. King Candy Co.,* 288 F.2d 944 (Cust. & Pat.App.1961) and *Bon Ami Co. v. McKesson & Robbins, Inc.,* 93 F.2d 915 (Cust. & Pat.App.1938) are inapposite.

*A. Did the district court abuse its discretion in refusing to hold defendants in contempt for their use of the one-word name "Falcon"?*

■ The original consent judgment enjoined defendants from using "the terms FALCON–FOAM or FALCON FOAM, or any colorable imitations thereof in connection with the ... advertising of any

foamed products." Final Judgment, *supra* note 1, ¶ 3. As an exception to this general prohibition, however, the consent judgment stated that "defendants may do business using a trade name which includes the word FALCON providing, however, that when defendants use a trade name incorporating FALCON therein, defendants shall include a falcon bird perched on the 'F' of FALCON wherever possible and practical." *Id.* ¶ 4(b).

Vertex argues that the portion of paragraph 4(b) reading "defendants may do business using a trade name which *includes* the word · FALCON providing, however, that when defendants use a trade name *incorporating* FALCON therein," exposes defendants to contempt because "the only fair reading of this requirement is that 'Falcon' be used with other terms and not alone." This argument led the parties to engage in a semantic battle over the meaning of "includes" and "incorporating." They traded definitions from dictionaries and other authorities with inconclusive results. Because Vertex failed to show by clear and convincing evidence that defendants' interpretation of "includes" and "incorporating" as allowing use of the single word "Falcon" was unreasonable, this was an insufficient ground for the district court to hold defendants in contempt. *Rinehart v. Brewer*, 483 F.Supp. at 171.

Relying on the portions of paragraphs 3 and 4 quoted above, Vertex also argues that the exception of paragraph 4(b) should not be read in a manner that swallows the general prohibition of paragraph 3. Vertex argues that the purpose of paragraph 3, and the central purpose of the consent judgment as a whole, is "to protect Vertex's 'Falcon-Foam' trademark from confusion." In Vertex's view, "almost any advertise-

ment that uses Falcon violates the Final Judgment because it causes confusion." Vertex therefore concludes that paragraph 4(b) must be read as not permitting the use of the word "Falcon" standing alone.

The difficulty with this argument is that paragraph 4(b) is an express exception to the general prohibition of paragraph 3. Because exceptions operate to limit the scope of a general rule, we think that the district court did not err in concluding that Vertex failed to meet its burden of showing by clear and convincing evidence that defendants had violated the consent judgment. We therefore hold that the district court did not abuse its discretion in refusing to find defendants in contempt for using the one-word name "Falcon."

*B. Did the district court abuse its discretion by not holding defendants in contempt for their use of the name "Falcon," without an accompanying picture of a bird perched on the "F," in small Yellow Pages advertisements and listings?*

■ The original consent judgment required "that when defendants use a trade name incorporating FALCON therein, defendants shall include a falcon bird perched on the 'F' of FALCON wherever possible and practical and, in particular, on . . . advertising materials . . . and Telephone Directory Yellow Pages listings." Final Judgment, *supra* note 1, ¶ 4(b). Vertex submitted several small display ads and one-line name-address-telephone number listings that did not contain a picture of a falcon bird and argued that this was sufficient to require the district court to hold defendants in contempt.[3]

Defendants argue that the language of the consent judgment requires only that

---

3. Vertex argues that the defendants cannot avoid contempt where they caused the inability to comply with the injunction. *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980). Here, defendants chose the size of their ads, which were one and three-fourths inches by one and one-eighth inches; moreover, the original small display advertisements enjoined by the consent judgment were the same size and contained a falcon bird.

Vertex's argument is irrelevant, however, where the district court's decision was based on the ambiguity of the phrase "wherever possible and practical." Although defendants' conduct in omitting the picture of a bird from small display ads comes very close to the line of contempt, we recognize defendants' extensive compliance in other areas.

they depict falcon birds "wherever possible and practical." As evidence of compliance defendants showed that they had included birds on stationery, business forms, signs, delivery vehicles, and other, larger advertisements.

At the hearing on Vertex's applications, the district court agreed with defendants and held that there was an insufficient showing to justify holding them in contempt. The court's reasoning apparently was that the "wherever possible and practical" language of the original consent agreement was ambiguous and that defendants' interpretation was not unreasonable. This was not an abuse of discretion.[4]

*C. Did the district court abuse its discretion by refusing to hold defendants in contempt for their failure to prevent telephone directory listings from appearing under the name "Falcon Foam Plastics, Inc."?*

■ The original consent judgment permitted defendants to use the corporate name "Falcon Foam Plastics, Inc." only for legal reasons and not for commercial or publicity purposes. Use of "Falcon Foam Plastics, Inc." in telephone directory White Pages listings was expressly prohibited. Final Judgment, *supra* note 1, ¶ 4(a). Vertex argues that defendants should be held in contempt for failing to prevent their listings in the 1980 Canoga Park-Reseda-Agoura Yellow Pages Directory from appearing under the name "Falcon Foam Plastics, Inc."[5]

Vertex relies on cases holding that inadvertence or good faith failure to comply with a consent judgment exposes the violator to civil contempt because the sanction is partly remedial in nature. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599, 604 (1949) ("Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents.... An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently." (footnote omitted)); *Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 128 n.2 (2d Cir. 1979) (citing *McComb*); *see also Commodity Futures Trading Commission v. Premex, Inc.,* 655 F.2d 779, 785 n.11 (7th Cir. 1981).

Defendants argue that the district court declined to hold them in contempt because they were in substantial compliance with the consent judgment. We think this argument is sound. It is clear that substantial compliance with the terms of a consent judgment is a valid defense to a charge of criminal contempt, and it appears to be a defense to a finding of civil contempt as well. *United States v. Baker,* 641 F.2d 1311, 1317 (9th Cir. 1981) (criminal contempt) (good faith effort to comply with court order a defense); *U. S. Steel Corp. v. UMW,* 598 F.2d 363, 368 (5th Cir. 1979) (civil contempt) (traditional defense of substantial compliance available); *Sekaquaptewa v. MacDonald,* 544 F.2d 396, 400, 406 (9th Cir. 1976) (application for contempt by private party, so arguably a civil contempt proceeding) (defendants failed to take "all reasonable steps within their power" to assure compliance with court orders), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977); *Washington Metropolitan Area Transit Authority v. Amalgamat-*

---

**4.** The district court did clarify this "wherever possible and practical" language for the future. *See* Order Denying Plaintiff's Applications for an Order Re Contempt, *supra* note 2, ¶¶ 2–3.

**5.** Defendants requested the name change in the Canoga Park-Reseda-Agoura Yellow Pages Directory on November 21, 1980. The second application for contempt was filed on June 12, 1981.

Vertex's second application also sought to have defendants held in contempt for a listing under the name "Falcon Foam Plastics, Inc." in the 1980–81 Plastics West Directory, a private industry directory. At the hearing on the applications for contempt, it became clear that defendants were not aware of the Plastics West listing until the application for a contempt order was filed, and that defendants had not requested or paid for the listing. Vertex does not appeal the district court's refusal to hold defendants in contempt for the Plastics West listing.

ed Transit Union, National Capital Local Division 689, 531 F.2d 617, 621 (D.C.Cir. 1976) (coercive civil contempt proceeding); Southern Railway v. Brotherhood of Locomotive Firemen & Enginemen, 337 F.2d 127, 135 (D.C.Cir.1964) (substantial compliance found where only a few technical violations of court order); Aspira of New York, Inc. v. Board of Education, 423 F.Supp. 647, 654 (S.D.N.Y.1976) (coercive civil contempt).

Vertex introduced evidence of only one violation: the two listings in the 1980 Canoga Park-Reseda-Agoura Yellow Pages Directory. Defendants introduced evidence that this violation had been discovered and steps taken to correct it in November, 1980, prior to Vertex's application for an order holding defendants in contempt. We hold that the district court did not abuse its discretion in concluding that defendants had made every reasonable effort to comply with the court's order and that defendants were therefore not in contempt. Order Denying Plaintiff's Applications for an Order Re Contempt, supra note 2, ¶ 5. Defendants' "every reasonable effort" constituted substantial compliance.

*II. Did the district court err in not holding defendants in contempt once it held that they were required to change their advertisements to comply with the consent judgment?*

Vertex relies on *Vuitton et Fils,* 592 F.2d at 130, for the proposition that by requiring defendants to change their future advertisements, the district court must have found a violation of the consent judgment sufficient to hold defendants in contempt. We find *Vuitton* to be easily distinguishable, however.

The decree in *Vuitton* was absolutely clear and subject to no ambiguity. The issue there was to whom the unambiguous prohibitions of the judgment should apply. Here, the district court found that the "wherever possible and practical" language of the judgment was ambiguous in regard to when defendants were required to display a falcon bird, and thus, that Vertex did not establish a violation by clear and convincing proof. The district court did not abuse its discretion in refusing to hold defendants in contempt. Moreover, the district court could properly clarify that ambiguous language, and this it did, requiring defendants to change their future advertising to comply with the consent judgment, as clarified.

*III. Did the district court err in not permitting Vertex to conduct further discovery?*

Vertex argues that because it has established several violations of the consent judgment sufficient to require a finding of contempt, the district court erred in refusing to permit discovery necessary to determine the extent of damage. To the contrary, no discovery is necessary because defendants were not in contempt.

*IV. Did the district court err in interpreting the consent judgment as permitting use of the single word "Falcon" as defendants' trade name?*

In its order denying Vertex's applications for contempt, the district court also clarified the terms of the original consent judgment in an effort to remove the ambiguities brought to its attention. *See* Order Denying Plaintiff's Applications for an Order Re Contempt, *supra* note 2, at ¶¶ 2–4. Vertex appeals the district court's interpretation of the consent judgment as not requiring defendants "to use the word 'Falcon' only as part of a longer trade name which includes more than the single word 'Falcon.'" *Id.* ¶ 4.

"[S]ince consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts . . . ." *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236–37, 95 S.Ct. 926, 934, 43 L.Ed.2d 148, 161–62 (1975) (footnote omitted). Thus the district court's interpretation of the consent judgment is a matter of law and, as such, is freely reviewable by this court on appeal. *Kittitas Reclamation District v. Sunnyside Valley Irrigation District,* 626 F.2d 95, 98 (9th Cir. 1980), *cert. denied,* 449 U.S. 1079, 101 S.Ct. 861, 66 L.Ed.2d 802 (1981); *accord Brown v. Neeb,* 644 F.2d 551, 557–58 & n.12 (6th Cir. 1981); *Eaton v. Courtaulds of*

*North America, Inc.,* 578 F.2d 87, 90 (5th Cir. 1978).

The Supreme Court has provided the following guidelines for the interpretation of consent decrees:

Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, . . . the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.

*United States v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256, 263 (1971) (emphasis in original) (footnote omitted).

Bearing this in mind, we are extremely wary of Vertex's argument that the "purpose" of the consent judgment was to protect Vertex from trade infringement. Although it is clear that this was Vertex's purpose, the defendants undoubtedly intended for the language of the consent judgment to permit use of the single-word trade name "Falcon."

The language of paragraph 4(b) does not explicitly require that defendants use "Falcon" in a trade name of more than one word. Had Vertex wished such a limitation, it should have negotiated for it and included that prohibition in the language of the consent decree. We do not wish to rewrite the parties' "contract" by holding, in light of the purpose of only one of the parties to the consent judgment, that language which does not explicitly prohibit the use of the single word "Falcon" does in fact do so.

Finally, we realize that the district judge oversaw the entire litigation process, from the filing of the original complaint for trademark infringement, through the consent judgment, to his subsequent interpretation of that judgment. Although we are permitted de novo review, we think that in this instance the district judge's view deserves deference. *Brown v. Neeb,* 644 F.2d at 558 n.12 (deferring to district judge because "[f]ew persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it"). We therefore affirm the district judge's interpretation of the consent judgment.

AFFIRMED.