**HARLEY–DAVIDSON, INC., Appellant,**

v.

**William MORRIS D/B/A Bill's Custom Cycles.**

No. 93–7327.

United States Court of Appeals, Third Circuit.

Argued Nov. 2, 1993.

Decided March 21, 1994.

James J. Kutz, Charles I. Artz, Eckert, Seamans, Cherin & Mellott, Harrisburg, PA, Dyann L. Bumpke (argued), Fred Wiviott, Michael E. Husmann, Michael, Best & Friedrich, Milwaukee, WI, for appellant.

Thomas A. James, Jr. (argued), James & Mihalik, Bloomsburg, PA, for appellee.

Before BECKER and STAPLETON, Circuit Judges, and RESTANI, Court of International Trade Judge.[*]

## OPINION OF THE COURT

RESTANI, Judge.

Plaintiff-appellant Harley–Davidson, Inc. ("Harley–Davidson") appeals from the decision of the United States District Court for the Middle District of Pennsylvania denying its motion that William Morris ("Morris") be held in contempt for violation of a consent judgment and permanent injunction. For the reasons described herein, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

### I.

Harley–Davidson is a manufacturer of motorcycles. Morris owns and operates Bill's. Custom Cycles, which sells used and obsolete Harley–Davidson motorcycle parts, but has never been an authorized dealer of cycles, services or parts for Harley–Davidson. Morris also has on display in his store a large collection of motorcycle memorabilia related to Harley–Davidson and Indian brand cycles, including literature, signs, caps, old motorcycles, and related items.

Harley–Davidson brought this action on April 4, 1991, alleging that Morris was infringing Harley–Davidson's trademarks and engaging in unfair competition. Harley–Davidson claimed its registered trademarks were misused by Morris in several ways, including: 1) use of unauthorized signs and items on the premises that bear Harley–Davidson trademarks; 2) use of promotional materials that contain Harley–Davidson trademarks and the Morris store name, copied from materials created by Harley–Davidson; and 3) unauthorized sale of T-shirts bearing one or more of the Harley–Davidson trademarks together with the Morris store name. Appendix ("App.") at 11–12.

The parties entered into a settlement agreement during late July or early August 1991. Parties subsequently entered into a consent judgment and permanent injunction on September. 3, 1991.[1] Section 5 of the consent judgment provides, in part, that:

5. Defendant and his agents, ... any and an [sic] all persons acting in concert with them, be and the same hereby are permanently and perpetually enjoined and restrained from:

(a) continuing, resuming or initiating the use of any of the Harley–Davidson Trademarks, either alone or in combination with any other words or design elements, or any similar mark which so resembles any of the Harley–Davidson Trademarks so as to be likely to cause confusion, deception or mistake on or in connection with the advertising, offering for sale, or sale of any service or any goods not manufactured by Harley–Davidson or an authorized Harley–Davidson licenses [sic] and sold by Harley–Davidson or its licensee in the ordinary course of business for use by consumers;

(b) continuing, resuming or initiating the use of any signs, displays, advertisements, or directory listings bearing any of the Harley–Davidson Trademarks, either alone or in combination with any other words or design elements, or any similar mark which so resembles any of the Harley–Davidson Trademarks so as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, or sale of any goods or services or engaging in the purchase, sale or distribution of such signs, displays or advertisements;

(c) passing off, inducing or enabling others to sell or pass off any product or service as being produced by or authorized by Plaintiff, which is not Plaintiff's or not produced or rendered under the control

---

[*] Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

1. As of August 15, 1991, both parties stipulated to the entry of the consent judgment and perma-nent injunction, and judgment was entered on September 3, 1991. App. at 121–26. Morris agreed to enter into the consent judgment and permanent injunction as part of the settlement agreement. App. at 128, ¶ 1.

and supervision of Plaintiff, and approved by Plaintiff in connection with any of the Harley–Davidson Trademarks.

*Id.* at 123–25.

Harley–Davidson filed its contempt motion on September 1, 1992, after discovering that Morris continued to display signs on the store premises, and to sell T-shirts, containing Harley–Davidson trademarks. A hearing was conducted on November 17, 1992. The district court denied Harley–Davidson's motion on December 4, 1992, on the basis that, *inter alia*, Morris had not engaged in "operat[ion of] his business in any way so as to cause trademarks of plaintiff to be used in a manner likely to cause confusion."[2] *Harley–Davidson, Inc. v. William Morris d/b/a Bill's Custom Cycles*, No. 1:CV:91–0448 (M.D.Pa. Dec. 4, 1992) ("*Harley. I*"), App. at 214–19.

## II.

Appellate jurisdiction in this case is based upon 28 U.S.C. § 1291 (1988), as the district court's order was final. The district court had jurisdiction pursuant to 28 U.S.C. § 1338(a) (1988), as this case arose under the Lanham Act, 15 U.S.C. §§ 1051–1127 (1988).

■ The scope of review on an appeal from the denial of a motion for a contempt order is whether there has been an abuse of discretion. *Martin v. Int'l Matex Tank Terminals–Bayonne*, 928 F.2d 614, 626 (3d Cir. 1991); *American Greetings Corp. v. Dan-*

*Dee Imports, Inc.*, 807 F.2d 1136, 1140 (3d Cir.1986). The district court may be reversed only where the denial is based on an error of law or a finding of fact that is clearly erroneous. *Martin*, 928 F.2d at 626.

■ The district court made no finding of any ambiguity in the consent judgment, but determined that Morris was not in violation of its terms. To the extent we review the issue of the existence of ambiguity, the standard of review is plenary, as it is a question of law. *Coca–Cola Bottling Co. v. Coca–Cola Co.*, 988 F.2d 386, 401 (3d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 289, 126 L.Ed.2d 239 (1993); *Int'l Union, UAW v. Mack Trucks, Inc.*, 917 F.2d 107, 111 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).

## III.

Harley–Davidson contends on appeal that the district court's analysis in denying the contempt motion was incorrect, because the court construed the consent judgment to prohibit only conduct that would be likely to cause confusion. *See Harley I*, at 5–6, App. at 218–19, ¶¶ 21–22. Likelihood of confusion is an aspect of the standard for determining whether there has been infringement of federally registered and unregistered trademarks, pursuant to 15 U.S.C. §§ 1114(1) (1988), 1125(a)(1) (Supp. IV 1992).[3] Para-

---

**2.** In its motion for reconsideration filed December 18, 1992, Harley–Davidson raised the argument that the district court's ruling was based upon a finding of absence of any likelihood of confusion caused by Morris. The district court, in denying the motion, stated that likelihood of confusion played a necessary role in assessing the alleged violations of the consent judgment, because this language was incorporated in the judgment. *Harley–Davidson, Inc. v. William Morris d/b/a Bill's Custom Cycles*, No. 1:CV:91–0448 (M.D.Pa. Apr. 9, 1993), App. at 225.

**3.** Section 32 of the Lanham Act provides, in pertinent part, that:

(1) Any person who shall, without consent of the registrant—
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection

with which such use is likely to cause confusion, or to cause mistake, or to deceive.... shall be liable in a civil action by the registrant....

15 U.S.C. § 1114(1) (1988). Section 43(a) of the Act, further provides, in part, that:

(a)(1) Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

graph 5(b) of the consent judgment employs the statutory language of §§ 1114 and 1125, that is, Morris was restrained and enjoined from the use of signs that incorporated "any of the Harley–Davidson Trademarks either alone or in combination ..., or any similar mark which so resembles any of the [trademarks] so as to be likely to cause confusion, deception or mistake." [4]  App. at 124.

Morris does not dispute that in the consent judgment, "the parties [ ] consented by stipulation to the entry of a finding of liability," *id.* at 122, and that he admitted to committing trademark infringement. *Id.* at 123, ¶ 4. However, Morris argues that ¶ 5(b) prohibits only use of signs likely to cause consumer confusion. Morris alleges that he removed from his business premises only signs that bore both the words "Harley–Davidson" and Harley–Davidson's bar and eagle design, because he did not think that the remaining signs were likely to cause confusion. *Id.* at 94–96. In contrast, Harley–Davidson argues that the "or" within ¶ 5(b) means that the "likelihood of confusion" clause in ¶ 5(b) modifies only the term "any similar mark" and not the term "Harley–Davidson Trademarks." Thus, according to Harley–Davidson, actual marks, unlike similar marks, require no showing of likelihood of confusion in order for their use to be prohibited by ¶ 5(b) of the consent judgment.

■ A defendant's admission of trademark infringement in a consent judgment functions as a waiver of the right to submit evidence on that issue in contempt proceedings. *See Interdynamics, Inc. v. Firma Wolf,* 653 F.2d 93, 97 (3d Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). A consent decree that admits infringement cannot be reopened on the issue of whether admitted infringing conduct did in fact constitute infringement. *Id.*

■ Both the plain language of the consent judgment and logic indicate that Harley–Davidson's position as to the limited role of the "likelihood of confusion" language is correct. Morris' alternate reading would require the district court, after the consent judgment was entered and liability for infringement was already admitted, to make determinations on the very question of trademark infringement, that is, whether there was likelihood of confusion arising from any of Morris' acts.

Reconsideration of likelihood of confusion to determine a contempt motion also runs counter to sound policy. *Interdynamics, Inc. v. Firma Wolf,* 653 F.2d at 97. To permit underlying trademark infringement liability issues to be reexamined in a subsequent contempt proceeding would act as a disincentive for settlement of legitimate disputes, encouraging relitigation of supposedly settled issues in contempt proceedings. *Id.* at 97–98 (citations omitted).

■ Failure to obey a court judgment is an indirect contempt, *id.* at 97; *Black's Law Dictionary* 319 (6th ed. 1990), absent extraordinary reasons, such as fraud or impossibility. To support a finding of contempt, Harley–Davidson was required to establish by clear and convincing evidence that Morris' conduct was in violation of the terms of the consent judgment. *Quinter v. Volkswagen of America,* 676 F.2d 969, 974 (3d Cir.1982).

■ The consent judgment specifically provides a list of Harley–Davidson trademarks at issue in the case, including those for the name "Harley–Davidson" without design, and refers to all of the enumerated marks as "Harley–Davidson Trademarks." [5] App. at 123, ¶¶ 2–3. As indicated, the consent judgment forbids "the use of any signs ... bearing any of the Harley–Davidson

15 U.S.C. § 1125(a)(1) (Supp. IV 1992). Harley–Davidson claimed Morris violated these sections of the Lanham Act. App. at 14, ¶¶ 18, 21.

4. Paragraph 5(b) most closely follows the text of § 2(d) of the Lanham Act, which forecloses registration of a trademark that so closely resembles a previously registered mark as to be likely to cause confusion. 15 U.S.C. § 1052(d) (1988). While the issue presented here is unauthorized

use of trademarks, the distinction does not affect our analysis.

5. Harley–Davidson possesses the exclusive right to control any use of its registered marks, including the words "Harley–Davidson," a registered mark without a design. *Volkswagenwerk AG v. Hoffman,* 489 F.Supp. 678 (D.S.C.1980); *see also* App. at 208–13 (certificates of registration of marks).

Trademarks, either alone or in combination with any other words." *Id.* at 124. At the hearing before the district court, Harley–Davidson presented clear and convincing evidence that a valid judgment existed, that Morris knew about the judgment, and that Morris violated its conditions by failing to remove all signs bearing Harley–Davidson trademarks from the premises. *See Roe v. Operation Rescue,* 919 F.2d 857, 868 (3d Cir.1990) (setting forth standards for contempt after violation of court judgment).[6]

Morris defended by testifying as to how he conducted his business, what items bearing Harley–Davidson trademarks were in his store, and what signs inside and outside the store displayed the marks. App. at 71–75, 78–85, 96–97. Such evidence was in fact relevant to determining whether Morris violated the consent judgment by continuing to display signs bearing actual Harley–Davidson trademarks regardless of likelihood of confusion, or by using marks similar to Harley–Davidson trademarks so as to cause likelihood of confusion. In its memorandum and order dated December 4, 1992, however, the district court made the determination that:

> 21. Defendant has not conducted his business in any way to hold himself out to the public as a licensed or authorized Harley–Davidson dealer. In addition to the absence of signs to that effect, he does not sell new or used Harley–Davidson motorcycles nor does he service them.

> 22. Defendant does not operate his business in any way so as to cause trademarks of plaintiff to be used in a manner likely to cause confusion, deception or mistake on or in connection with the advertising, offering for sale or sale of any goods or services.

**6.** The settlement agreement underlying the consent judgment states, with respect to removal of signs from Morris' store, that:

> Defendant agrees that he will remove from his business premises all signs, displays, banners and posters hearing [sic] any Harley–Davidson Trademarks. Defendant agrees that the signs presently on his premises and bearing Harley–Davidson Trademarks will not hereafter be used by Defendant or any other party in connection with any trade, business or enterprise, but may only be displayed privately in Defendant's home.

App. at 130–31, ¶ 6.

*Harley I* at 5–6, App. at 218–19. Thus, the court accepted evidence as to likelihood of confusion for broader purposes than was permitted by the terms of the consent judgment.

Morris argues that *Vertex Distributing Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885 (9th Cir.1982), supports the proposition that in a contempt proceeding where the court must construe vague terms in a consent judgment, the court may make a factual finding on infringement. The court in *Vertex* specifically noted that the district court had not abused its discretion in denying the contempt motion, on the basis that plaintiff "failed to show by clear and convincing evidence that defendants' interpretation [of vague terms in the consent judgment] was unreasonable." *Id.* at 890. *Vertex* is not applicable to the unambiguous consent judgment involved here.

As indicated, Morris' interpretation of the consent judgment is unreasonable. Under the appropriate interpretation of the consent judgment inquiry into likelihood of confusion was unnecessary with regard to signs bearing the defendant's marks. The district court clearly revisited the plain terms of the consent judgment as to liability for infringement; this it was not permitted to do. *Interdynamics,* 653 F.2d at 97. Accordingly, we find the district court erred in finding no contempt and we conclude that Morris' continued display of any signs bearing the Harley–Davidson trademarks constitutes a violation of the unambiguous terms of the consent judgment.

### IV.

Regarding sale of the infringing T-shirts, Morris contends that the judgment is vague

During the hearing, the district court excluded evidence of the settlement agreement between the parties proffered by Harley–Davidson, and thus did not consider the agreement when determining whether Morris' signs violated terms of the consent judgment. *Id.* at 50–51. Harley–Davidson appealed this ruling. We find that the language of the consent judgment itself clearly proscribes display of all signs incorporating any of the registered Harley–Davidson marks listed in ¶ 2 of the judgment, including the Harley–Davidson name without accompanying design. Thus, no purpose would be served by admission of the settlement agreement.

because it does not contain a specific prohibition of the use of Harley–Davidson marks in conjunction with Morris' store name on T-shirts. Morris further asserts that his continued sale of the T-shirts was based on an oral understanding he reached with an employee of Harley–Davidson prior to entry of the consent judgment.

At the contempt hearing, Morris described his conversation with a Harley–Davidson representative, William Wood, who purportedly told Morris that he could continue to sell the infringing T-shirts until his supply of shirts, ordered before entry of the consent judgment, was completely sold. App. at 86–91.[7] The district court based its denial of the contempt motion in part on Morris' testimony of the Wood conversation. *Harley I* at 5, App. at 218, ¶ 18.

■ For the purposes of enforcement, a consent judgment is to be interpreted as a contract, to which the governing rules of contract interpretation apply. *Chatam International, Inc. v. White Rock Distilleries, Inc.,* 1993 WL 377079, *3, 1993 U.S.Dist. LEXIS 13,157, *8 (E.D.Pa. Sept. 14, 1993) (citing *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975)). The court must discern the scope of a consent judgment by review of what is within the four corners of the consent, not by reference to "what might satisfy the purposes of one of the parties to it." *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 574, 104 S.Ct. 2576, 2585, 81 L.Ed.2d 483 (1984) (citation omitted).

■ Where the contract or agreement is unambiguous, parole evidence of prior inconsistent terms or negotiations is inadmissible to demonstrate intent of the parties. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1010 (3d Cir.1980). A contract is ambiguous if, after hearing evidence presented by the parties, the court determines that objective indicia exist to support the view that the "terms of the contract are susceptible of different meanings."

*Teamsters Indus. Employees Welfare Fund v. Rolls–Royce Motor Cars, Inc.,* 989 F.2d 132, 135 (3d Cir.1993). The district court made no finding of ambiguity, and we find the consent judgment to be unambiguous as to T-shirts, as well as signs. It is clear from ¶ 5(c) that use of the Harley–Davidson name with the bar and eagle design on T-shirts for sale is prohibited. Such use is "passing off … [of a] product … as being produced by or authorized by Plaintiff, which is not Plaintiff's or not produced or rendered under the control or supervision of Plaintiff." App. at 125, ¶ 5(c).

■ Parol evidence also may be admitted if the evidence clearly shows that the writing in question was not intended to, and did not, state the entire agreement between the parties. *Giant Food Stores, Inc. v. Marketplace Communications, Corp.,* 717 F.Supp. 1071, 1074 (M.D.Pa.1989). Morris contends that no integration of the contract occurred here, because the consent judgment does not expressly mention T-shirts. The consent judgment, however, covers the issue of the infringing T-shirts by enjoining unauthorized use of any of the marks on any item to be sold. App. at 125, ¶ 5(c).

Morris asserts that even if evidence of the purported agreement between Morris and Wood is barred by the parol evidence rule, this evidence is relevant to the issue of Morris' willfulness in violating the consent judgment. During the hearing for the contempt motion, the district court permitted Morris to testify regarding what he thought he agreed to do pursuant to the settlement agreement. *Id.* at 94–95. The district court overruled plaintiff's objection to the questioning because the testimony pertained to intent and willfulness. *Id.* at 90–91.

■ We note that willfulness is not a necessary element of civil contempt. *Waste Conversion, Inc. v. Rollins Environmental Services (NJ), Inc.,* 893 F.2d 605, 609 (3d Cir.1990), (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)). Morris' testimony on intent and willfulness was relevant to the contempt proceeding only insofar as it per-

7. Morris acknowledged receipt of a letter from Wood dated February 6, 1991 (a date also prior to the consent agreement), informing Morris that no back imprint was permitted on officially licensed Harley T-shirts. App. at 98–99.

tained to the extent of the sanction to be imposed. *TWM Mfg. Co. v. Dura Corp.,* 722 F.2d 1261, 1273 (6th Cir.1983).

Although the Ninth Circuit in *Vertex,* 689 F.2d at 891, determined that where a defendant's actions appear to be based on a good faith and reasonable interpretation of a court order, no contempt can be found, the court did not hold that all good faith interpretations would be a defense to contempt. This and other circuits have more recently narrowed use of the good faith defense. *Thompson v. Johnson,* 410 F.Supp. 633, 640 (E.D.Pa.1976), *aff'd mem.,* 556 F.2d 568 (3d Cir.1977) (prohibited acts done inadvertently or in good faith do not alone preclude finding of contempt); *TWM Mfg.,* 722 F.2d at 1273 (advice of counsel and good faith conduct will not relieve party from liability for a civil contempt). Accordingly, evidence presented by Morris regarding his good faith does not bar the conclusion we reach here, that Morris acted in contempt of the consent judgment with respect to both display of signs and sale of T-shirts.

### V.

The district court's denial of the contempt motion will be reversed, and this matter will be remanded to the district court for determination of an appropriate sanction against Morris for his conduct in contempt of the consent judgment.