61 F.3d 911
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
INTEGRATED COMPUTER SYSTEMS PUBLISHING CO., INC.,
Plaintiff-counter-defendant-Appellee,
v.
The LEARNING TREE OPEN UNIVERSITY,
Defendant-counter-claimant-Appellant.
INTEGRATED COMPUTER SYSTEMS PUBLISHING CO., INC.,
Plaintiff-counter-defendant-Appellee,
v.
The LEARNING TREE OPEN UNIVERSITY, Defendant,
and
G.S.G. Enterprises, Inc., dba Learning Tree University,
Defendant-counter-claimant-Appellant.
 Nos. 93-56656, 94-55799.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 1, 1995.
Decided July 26, 1995.
 
 Before: BEEZER and TROTT, Circuit Judges, and BURNS, District Judge.*
 MEMORANDUM**
 I. OVERVIEW
 Learning Tree Open University ("LTU") appeals from the district court's Judgment of Dismissal in favor of Integrated Computer Systems Publishing ("ICSP") upon remand from the Ninth Circuit in LTU's action to have ICSP held in contempt of a 1987 Consent Judgment for changing its tradename to "Learning Tree International." LTU also appeals the district court's award of attorney's fees and costs to ICSP. Because the record is unclear regarding whether the district court and the parties understood the jurisdiction of the district court upon remand, we vacate the Judgment of Dismissal and remand. We also vacate and remand the district court's award of attorney's fees and costs for the district court action, but we affirm the award of appellate attorney's fees and costs for the previous appeal.
 II. FACTS AND PRIOR PROCEEDINGS
 In 1987, the parties entered into a Consent Judgment in settlement of a 1984 suit filed by ICSP alleging various federal and state claims and counterclaims for trademark infringement, unfair competition, and tradename infringement. The 1987 Consent Judgment set out the relative rights of the parties regarding use of the term "Learning Tree" in various permutations.
 In 1989, ICSP changed its tradename to "Learning Tree International." LTU filed a motion for an order enforcing the Consent Judgment and holding ICSP in contempt. The district court granted LTU's motion. ICSP filed a notice of appeal and moved to stay the district court's contempt order pending resolution of the appeal. The district court denied the motion to stay and entered a second contempt order against ICSP.
 On June 8, 1993, we reversed the district court's two contempt orders because it was not shown with clear and convincing evidence that ICSP acted in bad faith. More specifically, we stated:
 LTU has failed to show that the parties intended the consent judgment to preclude any and all use of the words "Learning Tree" by ICSP in its tradename in the three counties. Indeed, the name change appears to have been beyond the parties' contemplation at the time the judgment was entered.
 ... most important, we believe that paragraph two of the consent judgment reasonably can be read to support the position advanced by either party. Thus, the name change 'appears to be based on a good faith and reasonable interpretation' of the consent judgment, and ICSP should not be held in contempt. See Vertex [Distrib., Inc. v. Falcon Foam Plastics, Inc.], 689 F.2d [885,] [ ] 889 [ (9th Cir.1982) ]. Therefore, we reverse the district court's initial contempt order.
 Integrated Computer Systems Publishing Co. v. The Learning Tree Open University, No. 92-55027 (9th Cir. June 8, 1993).
 We ordered each party to bear its own costs on appeal.
 In September, 1993, the district court, with a different judge presiding, convened a hearing to spread the mandate. Minutes before the hearing was to begin, ICSP gave LTU a copy of a proposed Judgment of Dismissal in favor of ICSP. ICSP had apparently already submitted the proposed Judgment of Dismissal to the district court. Upon taking the bench, the district court indicated that it had already signed the proposed Judgment of Dismissal. The Judgment of Dismissal, drafted by ICSP ostensibly in compliance with the mandate, dismissed the two contempt motions, permitted ICSP to use the tradename "Learning Tree International," and awarded costs to ICSP for defending against the two contempt motions before the district court. On October 21, 1993, the district court denied LTU's subsequent motion to alter or amend the Judgment of Dismissal.
 Subsequently, the district court awarded attorney's fees and "non-taxable costs" to ICSP for both of the contempt actions before the district court and for the previous appeal to us. Apparently before the time expired for LTU to file objections, the district court entered, verbatim, two sets of findings of fact and conclusions of law as well as a judgment awarding attorney's fees and "non-taxable" costs, all drafted by ICSP.
 In No. 93-56656, LTU appeals the Judgment of Dismissal and award of costs, as well as the district court's denial of its motion to alter or amend the Judgment of Dismissal. In No. 94-55799, LTU appeals the district court's judgment awarding attorney's fees and non-taxable costs to ICSP, as well as two sets of supporting findings of fact and conclusions of law, all filed May 13, 1994.
 III. ANALYSIS
 A. The Judgment of Dismissal
 LTU argues that the district court filed the Judgment of Dismissal in error because it was inconsistent with the mandate of our previous decision. In contrast, ICSP argues that the Judgment of Dismissal is consistent with, indeed compelled by, our previous disposition because ICSP won reversal of the two contempt judgments. Furthermore, ICSP argues that the district court merely exercised its authority to clarify, by summary judgment, the Consent Judgment which we had previously deemed ambiguous. LTU counters that the Judgment of Dismissal could not have been a summary judgment because no summary judgment motion was pending; moreover, even if it was a summary judgment, it was wrongfully filed by the district court without notice or an opportunity to be heard provided to LTU.
 Whether the Judgment of Dismissal and denial of LTU's motion to alter or amend lay within the mandate issued by this court in the previous appeal is reviewed de novo. See Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust, 824 F.2d 765, 767 (9th Cir.1987). We vacate the Judgment of Dismissal and remand.
 In the previous appeal we reversed the district court's order of contempt. Upon issuance of the mandate, the district court was required to comply with our memorandum and vacate the contempt orders. But the district court also had the discretion to "act on matters left open by the mandate." Caldwell, 824 F.2d at 767 (internal quotations omitted). Thus, on remand the district court was permitted to clarify ambiguous language in the Consent Judgment. See Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 892 (9th Cir.1982) (concluding that an ambiguity precluded a finding by clear and convincing evidence that a party violated a consent judgment, yet district court could properly clarify the ambiguous language and order future compliance with a consent judgment, as clarified).
 In our previous decision, we noted that the Consent Judgment, as written, did not preclude the use of the tradename "Learning Tree International," because the Consent Judgment was ambiguous. Because the Consent Judgment was ambiguous, and because either party's interpretation of the Consent Judgment was equally plausible, we concluded that ICSP could not be held in contempt--ICSP could not violate an ambiguous provision of the Consent Judgment.
 Our holding did not mean, however, that because ICSP could not be held in contempt, the Consent Judgment could be interpreted only along the lines that ICSP urged, to the exclusion of LTU's interpretation. Our previous decision did not foreclose a clarifying interpretation by the district court, an interpretation which would govern future relations between the parties. See Vertex, 689 F.2d at 892 ("the district court could properly clarify that ambiguous language ... requiring defendants to change their future [actions] to comply with the consent judgment, as clarified"). We declined any invitation to authoritatively construe the ambiguous provisions of the Consent Judgment by electing either ICSP or LTU's version of what the Consent Judgment meant. Thus we did not reach, indeed left open for the district court, the election between the two equally plausible interpretations urged respectively by the parties. Upon the issuance of our mandate, therefore, no controlling interpretation had yet been made. That task was left open (albeit implicitly) for the district judge to consider upon remand.
 We are unable to tell from the record whether the district court in the exercise of its own jurisdiction issued the Judgment of Dismissal and denied the motion to alter or amend in order to clarify the ambiguous provisions of the Consent Judgment, or whether it did so due to a misconception that it was compelled by our mandate to enter the Judgment of Dismissal drafted by ICSP. At the hearing to spread the mandate ICSP made no motion regarding clarification, and the district court did not explicitly indicate that it was entering anything more than a run-of-the-mill order complying with the mandate. We see no evidence in the record to lead us to conclude that the district court considered its power, consistent with Vertex, to authoritatively construe the ambiguous provisions of the Consent Judgment. Nothing in the record indicates, moreover, that the district court, in issuing the Judgment of Dismissal, was exercising its power to clarify the ambiguous Consent Judgment. Indeed, everything in the record points us to the conclusion that the district court issued the Judgment of Dismissal as a matter of complying with our mandate.
 Theoretically, LTU's motion to alter or amend the Judgment of Dismissal filed pursuant to Fed.R.Civ.P. 59(e) could have cured an apparently mistaken perception of the parties and the district court that the language and effect of the Judgment of Dismissal was compelled by our previous decision. The motion to alter or amend arguably should have been sufficient to cure any such misapprehension. In denying the subsequent motion, the district court appears to have considered at least the papers filed with the motion. But ICSP opposed the motion to alter or amend on the ground that our previous decision compelled the issuance of the Judgment of Dismissal as drafted. We disagree with ICSP. Because we are unable to determine whether the district court issued the Judgment of Dismissal as a matter of its own jurisdiction or whether the district court concluded its Judgment of Dismissal was compelled by our previous decision, we vacate the Judgment of Dismissal and remand it to the district court. The district court can now proceed to clarify the ambiguous provisions of the Consent Judgment, if the parties so move, as a matter of its own jurisdiction.
 Let us clarify our mandate: our earlier decision vacated the contempt judgments because we concluded the Consent Judgment was ambiguous. We did not authoritatively construe the Consent Judgment to mean what either ICSP or LTU urged. We left such a clarifying construction, governing the future actions of the parties, to the jurisdiction of the district court. It was within the jurisdiction of the district court then, and it is within the jurisdiction of the district court now, as a separate matter of its own jurisdiction, and not as a matter of enforcing, ministerially, any decision we make, to clarify the Consent Judgment to govern the parties' future actions. Vertex, 689 F.2d at 892.
 Far be it for us to intrude upon the district court's decisions of matters left to its jurisdiction. Indeed we are loathe to intrude upon the jurisdiction of the district court, and we wish to provide the district court and the parties the opportunity properly to clarify the ambiguous Consent Judgment. We express no opinion concerning whether the district court should clarify the ambiguous provisions of the Consent Judgment as urged by either party, or at all. We merely hold that such clarification was and is within the jurisdiction of the district court, if "properly presented." See Heinicke Instruments Co. v. Republic Corp., 543 F.2d 700, 703 (9th Cir.1976) ("The open reversal is also a remand to the district court to hear and decide any issues heretofore or hereafter properly presented to the district court which we did not decide.") (emphasis added); Idaho First Nat'l Bank v. Commissioner, 997 F.2d 1285, 1290 (9th Cir.1993) (same).
 B. District Court Attorney's Fees and Non-Taxable Costs
 Because we vacate the Judgment of Dismissal, we do not reach the merits of the award of attorney's fees and costs for the district court proceedings. Those attorney's fees and costs are predicated on ICSP's prevailing before the district court, and because we vacate the district court's Judgment of Dismissal, ICSP is no longer a prevailing party. Thus because "prevailing party" status is not determined until after a judgment becomes final, and because we vacate the Judgment of Dismissal, we vacate and remand the award of district court-level attorney's fees and non-taxable costs to the district court for reconsideration.
 C. Appellate Attorney's Fees and Non-Taxable Costs
 LTU first argues that ICSP is not entitled to attorney's fees and costs for the prior appellate proceedings because the result was "a draw." Accordingly, LTU argues, ICSP is not a "prevailing party" for purposes of attorney's fees and costs. Whether ICSP is a prevailing party is reviewed for clear error. See Oregon Environmental Council v. Kunzman, 817 F.2d 484, 496-97 (9th Cir.1987) (factual findings underlying a determination that a party is a "prevailing party" for purposes of 42 U.S.C. Sec. 1988 is reviewed for clear error).
 Even though we vacate the Judgment of Dismissal, we conclude that the appellate attorney's fees in issue were not awarded in clear error. We conclude that ICSP was the prevailing party in the previous appeal: we reversed the two contempt orders at issue in the appeal. Even though we concluded the Consent Judgment "reasonably can be read to support the position advanced by either party," we nevertheless reversed on the precise issue appealed. Whether the district court properly handled the spreading of the mandate thereafter does not affect the result on appeal--reversal. Thus ICSP was the prevailing party on appeal and was entitled to attorney's fees and costs on appeal. We conclude the district court's finding in this regard is not in clear error.
 LTU next argues that even if ICSP was a prevailing party, it is barred from recovering attorney's fees and costs for its previous appellate proceedings before us. First, LTU argues that our requirement on the previous appeal that both parties bear their own costs resolved the matter adversely to ICSP: all costs are to be borne by each party. Second, LTU argues that ICSP is not entitled to appellate attorney's fees because it did not state in its appellate pleadings that it would seek such fees. Third, LTU argues that by failing to mention that it would seek attorney's fees on appeal, ICSP waived any right to such fees.
 ICSP counters that it offered enough in its appellate pleadings to apprise us on the previous appeal that attorney's fees and costs would be in issue by referencing the Consent Judgment. Furthermore, it points to our transfer of the attorney's fees issue to the district court as conclusive evidence that we did not foreclose attorney's fees on the previous appeal. Additionally, ICSP argues that the term "costs" for purposes of Fed.R.App.P. 39 does not mean the same thing as "costs" for purposes of the Consent Judgment, as demonstrated by LTU's own motion for attorney's fees and costs, which included similar non-taxable costs. Finally, it argues that a local rule cannot divest it of its contractual right to attorney's fees, pursuant to the Consent Judgment.
 We agree with ICSP. Normally, the ordinary and usual meaning of the term "costs," which is left undefined in the Consent Judgment, would control the construction of the Consent Judgment. Ordinarily we would conclude that the term "costs" in the context of attorney's fees and costs means those ordinary costs associated with Fed.R.Civ.P. 54(d). Nevertheless, the most persuasive authority supporting ICSP's position that "costs" for purposes of the Consent Judgment have a more expansive meaning than "costs" for purposes of Rule 54(d) is LTU's own motion for attorney's fees and costs for the second contempt proceeding. LTU sought similar costs in that motion, costs which it now protests were not included within the meaning of the term in the Consent Judgment. We thus conclude that ICSP's interpretation of non-taxable costs is correct, given LTU's previous position in this litigation.[1]
 On the merits, we conclude that the district court did not abuse its discretion in the amount of the award of the appellate attorney's fees and costs, because that amount is substantiated by the record. We conclude the district court considered the relevant factors and that ICSP attempted to justify the reasonableness and the nonduplicative nature of the requested fees. Because the award does not appear to be out of bounds, we affirm.
 D. Attorney's Fees for this Second Appeal
 We order each party to bear its own costs on this appeal. We decline to reach the issue of attorney's fees and non-taxable costs on this appeal, but leave the issue open for the district court's decision, upon proper presentation.
 IV. CONCLUSION
 We vacate the Judgment of Dismissal and remand.
 We vacate and remand the award of district court-level attorney's fees and non-taxable costs. We affirm the award of appellate attorney's fees and non-taxable costs.
 We order each party to bear its own costs on this appeal, and decline to reach the issue of attorney's fees and non-taxable costs pursuant to this appeal.
 VACATED IN PART, AFFIRMED IN PART, and REMANDED.
 
 
 
 *
 The Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 ICSP cites to Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir.1994), in support of its contention that "costs" mean more than statutory costs. Harris v. Marhoefer, however, supports an award of nontaxable expenses as part of an award of Sec. 1988 attorney's fees. That is, an attorney in a Sec. 1983 case may, pursuant to Sec. 1988, recover as part of the award of attorney's fees those out-of-pocket expenses that "would normally be charged to a fee paying client." Id. (internal quotations omitted). In contrast, the non-taxable costs sought here are not statutorily awarded pursuant to Sec. 1988; rather, they are awarded pursuant to the Consent Judgment. Consequently, we do not rely on Marhoefer in determining the meaning of the term "costs" in the Consent Judgment