**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2289

_____

SOVEREIGN BANK

v.

REMI CAPITAL, INC; ERIK A. KAISER, Individually

*Jenzack Partners, LLC, as assignee for Sovereign Bank,
Appellant

*(Pursuant to Rule 12(a), Fed. R. App. P.)

_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 3-09-cv-01580)
District Judge: Honorable Peter G. Sheridan

_____

Argued: May 25, 2022

_____

Before: GREENAWAY, JR., PORTER, and PHIPPS, _Circuit Judges_.

(Opinion Filed: September 15, 2022)

Howard J. Bashman [ARGUED]
Suite 400
500 Office Center Drive
Fort Washington, PA 19034

Peter R. Bray
Bray & Bray
100 Misty Lane
Lanidex Executive Center
Parsippany, NJ 07054

Alissa L. Poynor
Riemer & Braunstein
100 Cambridge Street
22nd Floor
Boston, MA 02114
        *Counsel for Appellant*

Joseph B. Fiorenzo
Stephen M. Klein [ARGUED]
Mark S. Olinsky
Sills Cummis & Gross
The Legal Center
One Riverfront Plaza
11th Floor
Newark, NJ 07102
        *Counsel for Appellee*

_____

OPINION

_____

GREENAWAY, JR., *Circuit Judge*.

Parties settle their civil disputes. They enter into agreements wherein plaintiffs dismiss their case or defendants consent to entry of a judgment. The cases end. It is incumbent on the parties to detail, with precision and with clarity, the bargain they have struck. The failure to do so in an agreement, or in a consent judgment that reflects or incorporates that agreement, precludes a district court from enforcing an otherwise silent provision one party asks it to divine. Here, the District Court correctly discharged a consent judgment that was satisfied as written. Accordingly, we will affirm the District Court's final order discharging the judgment in this case.

I.    **BACKGROUND**

This appeal arises out of an action to collect on a defaulted loan originated over a decade ago. Sovereign Bank ("Sovereign") was a federally chartered savings bank headquartered in Pennsylvania.[1] REMI Capital, Inc. ("REMI") is a Delaware corporation, with its principal place of business in New Jersey. Erik A. Kaiser is an individual residing in New York. On January 25, 2007, Sovereign entered into a loan agreement with REMI, extending to REMI a $15 million line of credit to help REMI fund the origination or acquisition of mortgage loans for residential property (the "Loan

---

[1] In the years since this action was instituted, Sovereign Bank moved its headquarters to Boston, Massachusetts, and rebranded as Santander Bank, N.A.

Agreement"). In connection with the Loan Agreement, Sovereign and REMI executed a promissory note in the amount of $15 million (the "Promissory Note"). On that same date, Kaiser executed a suretyship agreement guaranteeing all of REMI's obligations under the Loan Agreement and Promissory Note (the "Suretyship Agreement"). The Suretyship Agreement contains a choice-of-law provision providing that Pennsylvania law governs interpretation of the agreement. [2]

As relevant here, Sovereign and Kaiser agreed that "any judgment entered against [Kaiser] pursuant to [the Suretyship Agreement] shall bear interest until paid at the Prime Rate plus six percent (6%) per annum, and not at the statutory rate of interest after judgment, and shall be collectible as part of any judgment under this Agreement." App. 93.

Eventually, REMI defaulted. On February 6, 2009, Sovereign sent REMI a default notice. Sovereign filed a complaint against REMI and Kaiser on April 3, 2009. Ultimately, the parties resolved the case by agreement, which the District Court entered as a consent judgment on September 1, 2010, in the amount of $1,560,430.24 (the "Consent

---

[2] We focus on the language of the Suretyship Agreement because Appellants' opening brief only seeks to enforce the contractual rate of interest against Kaiser solely on the basis of his guaranty. The language of the Suretyship Agreement, including the choice-of-law provision, thus governs Kaiser's obligations with respect to the loan underlying this action. REMI Capital does not appear to have participated in this appeal, without objection from either party, and its obligations under the Promissory Note are no longer relevant to this action.

4

Judgment").   Prior to entry of the Consent Judgment, the parties had the following discussion on the record before the District Court regarding the terms of settlement.

THE COURT:  Good afternoon. Thank you for coming. Thank you for bringing your clients.  Is there a settlement?  Or what are we doing, a consent judgment?

MR. HOFFMAN (counsel for REMI and Kaiser):  I guess that's correct.

THE COURT:  So[,] I think what we should do is place the terms of the consent judgment on the record.

MR. BARLIA (counsel for Sovereign Bank):  Okay.

MR. HOFFMAN:  The parties have agreed, your Honor, that the Court can enter judgment against the defendants in a sum to be computed as follows – I've not done the math, I apologize, your Honor.

THE COURT:  All right.

MR. HOFFMAN: The top number is $2,364,780.24, minus $992 – $992,350; again, $992,350, plus legal fees in the amount of $188,000.

THE COURT: All right. We'll compute that all out. At the present time I'll have an order drafted, and then the parties can sign it today. Are you willing to do that?

…

THE COURT: But that will end the case[,] correct? And the judgment is against both Mr. Kaiser and [REMI]?

MR. HOFFMAN: That is correct, your Honor.

MR. BARLIA: That is correct.

App. 402-03.

Counsel for the parties signed the Consent Judgment thereafter. The Consent Judgment provides, in its entirety:

This matter having been brought before the Court pursuant to a status conference; and the parties

6

having amicably resolved the matter and consented to a judgment against defendants REMI Capital, Inc. and Erik A. Kaiser (collectively, "Defendants") in favor of Sovereign Bank ("Plaintiff"); and for good cause having been shown;

It is on this 1st day of September 2010 ORDERED that judgment is entered jointly and severally against Defendants in the amount of $1,560,430.24.

App. 11. The Consent Judgment was silent as to any applicable interest rate.

On July 16, 2012, Sovereign Bank assigned and transferred to Jenzack Partners, LLC ("Jenzack"), all of the bank's right, title, and interest in and to the Consent Judgment. Jenzack, as assignee, is the Appellant in this action.

On December 8, 2017, Kaiser filed a motion to declare that judgment had been satisfied pursuant to Fed. R. Civ. P. 60(b)(5). On September 24, 2018, the District Court entered an order denying the motion. The District Court also ordered that: (1) the applicable interest rate is the Federal statutory post-judgment interest rate, fixed by the Federal Reserve Bank, at 0.26%; and (2) REMI may serve discovery on Sovereign Bank to determine the status of loans and other payments REMI made towards the Consent Judgment. In determining

7

that the statutory rate of interest applied, the District Court observed that no clear, unambiguous, and unequivocal language in the Consent Judgment demonstrated an intent to depart from the rate of interest provided by 28 U.S.C. § 1961.

On October 17, 2018, Jenzack appealed the District Court's September order. In its appeal, Jenzack sought to reverse the portion of the District Court's order applying the federal statutory post-judgment interest rate. Then, as now, Jenzack argued that the applicable interest rate is the rate contained in the contracts underlying the Consent Judgment. In a not precedential opinion, we declined to review the District Court's order because it was not yet final under 28 U.S.C. § 1291. *Sovereign Bank v. Remi Cap.*, 810 F. App'x. 101, 104-05 (3d Cir. 2020). We explicitly left open the question as to which interest rate was proper. *Id.* at 105.

On June 17, 2021, the District Court entered a final order, denying reconsideration of its earlier order setting the post-judgment rate of interest at the federal statutory rate, declaring post-judgment discovery complete, confirming the amount of money already paid by Kaiser to Jenzack, and discharging the Consent Judgment. Jenzack timely appealed.

## II.     JURISDICTION AND STANDARD OF REVIEW

The parties in this case are completely diverse, and the amount in dispute is greater than $75,000. The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. The District Court entered a final order in this case and Jenzack timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review grants or denials of relief under Rule 60(b), aside from those raised under Rule 60(b)(4), under an abuse of

8

discretion standard." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008). Here, our "review of the District Court's ruling with respect to . . . post-judgment interest" concerns interpretation of 28 U.S.C. § 1961 and "requires *de novo* review." *Traveler Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 157 (3d Cir. 2010).

## III. DISCUSSION

Jenzack asks us to slalom past an intervening settlement agreement and a plainly written consent judgment to award it more than a million dollars in post-judgment interest. We choose a different path. We are not convinced that interest should accrue at the Prime Rate plus six percent, as had been set forth in the Suretyship Agreement.

The doctrine of merger provides that "[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be 'merged' in the judgment." *In re Stendardo*, 991 F.2d 1089, 1099 (3d Cir. 1993) (quoting Restatement (Second) of Judgments § 18 cmt. a). "It is immaterial whether the judgment was rendered upon a verdict or upon a motion to dismiss or other objection to the pleadings or upon consent, confession, or default." Restatement (Second) of Judgments § 18 cmt. a. A successful plaintiff in a contract action, for example, may no longer pursue remedies on the basis of the underlying contract once a judgment is entered on that claim. Instead, he or she "may maintain proceedings by way of execution for enforcement of the judgment" or "maintain an action upon the judgment." *Id.*, cmt. c.

9

Interest on a party's defaulted obligation, then, ceases to accrue at a previously stipulated rate upon entry of a judgment. At that moment, interest on the new obligation, the judgment to be satisfied, accrues at the rate provided by statute or court rule. *Cf. Stendardo*, 991 F.2d at 1095 ("[C]ourts have consistently held that the doctrine of merger . . . entitles a mortgagee post-judgment to the legal rate of interest rather than the rate specified in the mortgage. Because the mortgage merges into the judgment, its terms specifying the contractual interest rate no longer exist to bind the parties.")

In federal money judgments, 28 U.S.C. § 1961 governs the rate at which interest accrues. [3] Both parties agree that while § 1961 provides a default rule, it may be modified by private agreement. They suggest that the rule announced by the Second Circuit in *Westinghouse Credit Corp. v. D'Urso* should govern: "[i]f parties want to override the general rule on merger and specify a post-judgment interest rate, they must express such intent through 'clear, unambiguous and unequivocal' language." 371 F.3d 96, 102 (2d Cir. 2004) (quoting *Banque Nationale de Paris v. 1567 Broadway Ownership Assocs.*, 669 N.Y.S.2d 568, 569 (N.Y. App. Div. 1998)). The Fifth, Seventh, Ninth, and Tenth Circuits have concluded the same. *See In re Lift & Equip. Serv., Inc.*, 816 F.2d 1013, 1018 (5th Cir. 1987); *Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1020 (7th Cir. 2001); *Citicorp Real Est., Inc. v. Smith*, 155 F.3d 1097,

---

[3] Section 1961 provides that interest "shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."

1107-08 (9th Cir. 1998); *Soc'y. of Lloyd's v. Reinhardt*, 402 F.3d 982, 1004 (10th Cir. 2005). *But see Broad St. Energy Co. v. Endeavor Ohio, LLC*, 806 F.3d 402, 410-11 (6th Cir. 2015) (declining to apply interest rate specified in escrow agreement to judgment).

In reaching its conclusion, the *Westinghouse* court reasoned that "§ 1961 is silent on the point, neither expressly permitting nor ruling out deviations by private agreement." 371 F.3d at 101. It also discerned that Congress's use of mandatory language in § 1961 was to "preclude[e] district courts from exercising discretion over the rate of interest or adopting an interest rate set by arbitrators" not to "limit[] the ability of private parties to set their own rates through contract." *Id.*

The contract at issue in *Westinghouse* provided that "[i]f and in the event payment . . . is not made on the due date, interest shall be added to the Amount Due" at a specified interest rate greater than the rate provided for by statute. *Id.* at 99. However, the *Westinghouse* court declined to apply the stipulated rate of interest post-judgment because "[t]he parties failed to state that this rate would apply to *judgments* rendered on [the underlying obligation]." *Id.* at 102 (emphasis supplied). The parties failed, in other words, to clearly, unambiguously, and unequivocally express their intent that judgments, not merely contract debts, should accrue interest at the agreed-upon rate.

In *Stendardo*, a bankruptcy case, we recognized the ability of parties to reflect in a mortgage that certain obligations would survive a judgment. 991 F.2d at 1095. There, creditors argued that a mortgage entitled them to recover certain post-judgment expenses from the debtors notwithstanding the prior

11

entry of a foreclosure judgment in creditors' favor. *Id.* at 1094. The mortgage provided that, upon default by the debtor, the creditor was entitled to recover for the payment of taxes and insurance premiums. *Id.* at 1092. However, we discerned that "[n]o language appears in the [m]ortgage at issue here that indicate[d] the parties' intent to preserve the [d]ebtors' obligation to pay the relevant taxes and premiums beyond the date of the [j]udgment." *Id.* at 1095-96. Thus, the creditors were not entitled to recover expenses incurred post-judgment. *Id.*

Here, by contrast, the language in the Suretyship Agreement is clear as crystal. The parties agreed, in no uncertain terms, that judgments entered against Kaiser on the basis of the Suretyship Agreement would accrue interest at the Prime Rate plus six percent. So, the post-judgment interest rate was not merged into the judgment. But holding that Jenzack is not claim precluded is neither the end of the story, nor the terminus of our analysis.

After the Suretyship Agreement, there was a settlement agreement—and the judgment entered in this case was the Consent Judgment transforming that settlement agreement into a judicial decree. Accordingly, as the District Court correctly surmised, the relevant question is whether the Consent Judgment demonstrates clearly, unambiguously, and unequivocally that the parties intended interest on the judgment to accrue at a stipulated rate. Because the Consent Judgment does not, we cannot accord Jenzack the relief sought.

The dissent concludes that "[w]ithout any reference to post-judgment interest, the consent judgment does not evidence a 'mutual and clear' intention to modify the contractual post-judgment interest rate." Diss. Op. at 6

12

(Phipps, J., dissenting) (quoting *County of Morris v. Fauver*, 707 A.2d 958, 967 (N.J. 1998)). It continues: "[n]or does the consent judgment provide so much as a hint that it fully and completely replaces the parties' prior agreement; it resolves only the amount of outstanding liability for loan obligations. Thus, the consent judgment does not contractually modify the agreed-upon post-judgment interest rate or fully replace the parties' prior agreement." *Id.* But we are interpreting the judgment itself, and the converse applies. The previously agreed-upon post-judgment interest rate does not modify the subsequently entered Consent Judgment.

The dissent's conclusion divorces the Consent Judgment from its context, fails to respect its nature as a judicial instrument, and upends our practice of settlement. Were we to adopt the dissent's approach, district courts would be inundated with arguments that, despite entry of a consent judgment, parties intended this or that term to survive entry of a judgment and the court need only look through their prior agreements and see for itself.

We can neither embrace nor endorse, a system that permits or encourages parties to return to court under similar circumstances. While that approach may suit a subsequent action to enforce a settlement agreement recorded solely as a contract, it is incumbent upon the parties to a consent judgment to fully memorialize their agreement on the judgment's face or through incorporation of other documents by reference.

Within the context of this record, the settlement agreement bears all the indicia of a substitute contract.[4] We

---

[4] Under Pennsylvania law, "[t]he required essentials of a novation are 'the displacement and extinction of a valid

13

would be hard-pressed to conclude that when asked by the District Court to place the terms of the consent judgment on the record, the parties would specify only "the Court can enter judgment against the defendants in a sum to be computed as follows… The top number is $2,364,780.24, minus . . . $992,350 . . . plus legal fees in the amount of $188,000," but yet also intend that the judgment would accrue interest at the Prime Rate plus six percent. App. 402. And again, when the District Court inquired as to whether the agreement on the just-recited terms would "end the case," the parties would respond "that is correct," if they intended to remain bound by this (and

contract, the substitution for it of a valid new contract . . . a sufficient legal consideration for the new contract, and the consent of the parties.'" *Buttonwood Farms, Inc. v. Carson*, 478 A.2d 484, 486 (Pa. Super. Ct. 1984) (emphasis removed) (quoting *Yoder v. T.F. Scholes, Inc.*, 173 A.2d 120, 121-22 (Pa. 1961)). The "intention of the parties to effect a novation or substituted contract may be shown by other writings, or by words, or by conduct or by all three." *Id.* at 487.

Though our dissenting colleague makes much of the supposed applicability of New Jersey law, the analysis is functionally identical. "[A] novation is when the parties agree to substitute a new validly executed contract for a previous contract" and "requires that the parties intend to 'extinguish the old contract.'" *GMAC Mortgage, LLC v. Willoughby*, 165 A.3d 787, 188 (N.J. 2017) (quoting *Wells Reit II—80 Park Plaza, LLC v. Dir., Div. of Taxation*, 999 A.2d 489, 497 (N.J. Super. Ct. App. Div. 2010). "In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement." *Wells Reit II*, 999 A.2d at 497.

14

only this) particular term of the underlying agreement. App. 403.

We need not parse out whether this recitation of the agreement placed on the record is in fact a substitute contract. The parties agreed to entry of the Consent Judgment, and we are bound to interpret it "within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971). This is because "consent judgments should be interpreted in a way that gives effect to what the parties have agreed to, as reflected in the judgment itself or in documents incorporated in it by reference." *SEC v. Levine*, 881 F.2d 1165, 1179 (2d Cir. 1989).[5] Were the Consent Judgment or an incorporated document ambiguous as to the applicable interest rate, it may be relevant what a prior agreement said on that point. *See id.*; *cf. Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994) (declining to consider evidence of an "oral understanding" about the terms of a consent judgment where the language of the judgment was unambiguous).

---

[5] We emphasize that a consent judgment is not a contract but a judicial decree, and that the parties' prior contract does not alter that judicial decree. *See United States v. Swift*, 286 U.S. 106, 115 (1932). This is particularly noteworthy here, where the District Court may have been unaware of a separate interest rate agreement. Preventing these backdoor amendments to consent judgments is also important because, in some contexts, district courts must assess a consent judgment's substantive fairness. *See, e.g.*, *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285 (2d Cir. 2014) (district courts have a duty to determine if consent decree is fair and reasonable for securities litigation).

15

Because the Consent Judgment is unambiguous, however, we must conclude that the parties did not agree interest would accrue at a stipulated rate.[6]

We note that this is, however subtly, different from the doctrine of merger-by-judgment as described by our dissenting colleague. *See* Diss. Op. at 4-6. Sovereign's contract claims were not extinguished solely by entry of a judgment in this case. Rather, the parties agreed to a settlement which they recorded in a judicial decree. The nature of that decree, the Consent Judgment, constrains us to interpret the subsequent agreement by the parties within the confines of its text. True to the contractual roots of the Consent Judgment, our analysis more closely resembles application of the contractual principle of merger than merger-by-judgment.

We join our sister circuits who have addressed the question in holding that parties may contract to a rate of post-judgment interest by demonstrating through clear, unambiguous, and unequivocal language in their agreement an intention to do so. We also conclude that the language in the Suretyship Agreement underlying this breach of contract claim clearly demonstrated the parties' intent to be bound by a stipulated rate of interest post-judgment. However, we cannot

---

[6] Jenzack's claim is fatally flawed for at least one other reason. Even if we were persuaded that the parties agreed the interest rate from the Suretyship Agreement should apply to the Consent Judgment, our ability to effectuate relief by amending the judgment itself is limited. Jenzack acknowledges that its time to amend or appeal from the Consent Judgment is long expired.

16

conclude that the District Court erred in discharging the judgment because the intervening settlement agreement and Consent Judgment demonstrated an intent to be bound by those explicit terms in exchange for resolving the litigation. Within the four corners of the Consent Judgment, there is no language from which we may infer that the parties intended the judgment to accrue interest at a different rate than is provided in § 1961.

## IV.    CONCLUSION

We will affirm the District Court's final order discharging the consent judgment as satisfied.

17

*Sovereign Bank v. REMI Capital, Inc.*, No. 21-2289
PHIPPS, *Circuit Judge*, dissenting.

The Majority Opinion affords too much weight to the one-sentence consent judgment entered by the District Court in this case. That consent judgment resolved the parties' dispute as to the underlying liability for loan obligations, but it said nothing about the post-judgment interest rate. That silence is not surprising: through the Master Promissory Note, the parties had previously agreed on the post-judgment interest rate, and that issue was not mentioned in the pleadings, much less disputed in the litigation. Nonetheless, the Majority Opinion concludes that the consent judgment nullifies the parties' previous agreement regarding the post-judgment interest rate so that the statutory default rate of post-judgment interest controls.

I respectfully dissent because the consent judgment does not have that effect. A consent judgment is "a hybrid" between a court order and a contract. *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 277 (3d Cir. 2001). And, as elaborated below, neither the court-order nor the contractual characteristics of the consent judgment in this case support the conclusion that it supplants the parties' prior agreed-upon post-judgment interest rate.

## I. The Merger-By-Judgment Doctrine Does Not Apply Here.

A consent judgment has attributes of a court order, and one of those qualities is the preclusive effect of a judgment. New Jersey law, which determines the consent judgment's

1

preclusive effect,[1] recognizes merger-by-judgment as a species of claim preclusion. *See Joseph L. Muscarelle, Inc. v. Dep't of Transp.*, 418 A.2d 1310, 1316 (N.J. Super. Ct. App. Div. 1980) ("[A] consent judgment has the same res judicata effect as any other judgment."). Under that rule's application, a judgment for a plaintiff on a breach-of-contract claim extinguishes any right that the plaintiff has to seek additional compensation for the breach. *See In re A & P Diversified Techs. Realty, Inc.*,

[1] The Majority Opinion mistakenly applies the choice-of-law clause in the Suretyship Agreement, which provides that the agreement is governed by Pennsylvania law. Because parties cannot, through contract, determine the preclusive effect of a federal court's judgment, that clause has no bearing on the merger-by-judgment analysis. Instead, the preclusive effect of a judgment entered by a federal court exercising diversity jurisdiction is governed by federal common law, which incorporates the forum state's preclusion rules. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001); *see also Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 205 (3d Cir. 2004) ("In a diversity action, we apply the preclusion rules of the forum state, unless they are incompatible with federal interests." (citing *Semtek*, 531 U.S. at 508–09)); 19 Arthur R. Miller, *Federal Practice and Procedure (Wright & Miller)* § 4511 (3d ed. April 2022 update) (explaining that *Semtek* "directed that state preclusion law be applied in diversity cases"). Rather than applying the law of the forum state, New Jersey, the Majority Opinion applies Pennsylvania law based on the choice-of-law clause in the Suretyship Agreement. That undermines the Majority Opinion's central holding that the consent judgment fully and completely replaces the parties' prior agreements. It also erodes the Majority Opinion's interest in relieving courts of the obligation to scour prior agreements between parties to assess which provisions survive entry of judgment – by finding and applying the choice-of-law clause in the Suretyship Agreement, the Majority Opinion does just that.

467 F.3d 337, 341 (3d Cir. 2006) (applying New Jersey law) ("Under the merger doctrine, a contract is deemed to merge with the judgment, thereby depriving a plaintiff from being able to assert claims based on the terms and provisions of the contractual instrument."). More succinctly, the claim for damages from a breach of contract merges into a judgment and cannot be relitigated. *See Culver v. Ins. Co. of N. Am.*, 559 A.2d 400, 404 (N.J. 1989) ("The rule [of res judicata] precludes parties from relitigating substantially the same cause of action."); *see also* Restatement (Second) of Judgments § 18 cmt. a (1982) ("When the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be 'merged' in the judgment."); Restatement (First) of Contracts § 444 (1932).

But the merger-by-judgment rule is not absolute. A contractual obligation is not merged into the judgment if the contract "clearly evidences an intent to preserve the effectiveness of th[e] provision post-judgment." *A & P*, 467 F.3d at 342 (alteration omitted) (quoting *In re Stendardo*, 991 F.2d 1089, 1095 (3d Cir. 1993)) (applying New Jersey law). And here, the Master Promissory Note does exactly that. It states that interest will accrue at "an annual rate (before and after judgment) that shall be an additional six percent (6%) above the [prime rate]." Master Promissory Note at 1 (Jan. 25, 2007) (JA83). Due to that unequivocal expression, the parties' agreement on the post-judgment interest rate in the Master Promissory Note falls outside the sweep of the merger rule.[2]

---

[2] To be sure, the statute setting the default rate for post-judgment interest, *see* 28 U.S.C. § 1961, does not foreclose the exception to the merger-by-judgment rule: every circuit to

3

## II. Under Principles of Contract Interpretation, the Consent Judgment Did Not Modify the Contractual Interest Rate or Completely Replace the Parties' Agreement.

Because it has attributes of a contract, a consent judgment "is to be interpreted as a contract [under] the governing rules of contract interpretation." *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994); *see also Regan v. Regan*, 587 A.2d 1330, 1333 (N.J. Super. Ct. Ch. Div. 1990) (interpreting a consent judgment under the rules of contract interpretation). As a baseline, the prior agreement unequivocally specified a post-judgment interest rate of 6% above the prime rate.[3] But it is possible for a consent judgment

---

examine the merger-by-judgment rule in the context of that statute has held that parties may "override the general rule on merger and specify a post-judgment interest rate" and thus "contract out of § 1961." *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 101–02 (2d Cir. 2004) (internal quotation marks omitted); *see also, e.g.*, *Mid Atl. Cap. Corp. v. Bien*, 956 F.3d 1182, 1208 (10th Cir. 2020) ("[P]arties may contract around the merger rule and specify a different postjudgment interest rate."); *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 457 (5th Cir. 2013) ("The merger rule is not absolute; parties can contract for a non-statutory rate of postjudgment interest.").

[3] *See Hymel v. UNC, Inc.*, 994 F.2d 260, 265–66 (5th Cir. 1993) (concluding that parties contracted out of the statutory default interest rate because their prior contract provided that all unpaid amounts "shall bear interest from maturity until paid, *both before and after judgment*, at the rate of 9% per annum"); *see also In re Lipitor Antitrust Litig.*, 868 F.3d 231, 265 (3d Cir. 2017); *Gov't Emps. Ret. Sys. of V.I. v. Gov't of V.I.*, 995 F.3d 66, 79 (3d Cir. 2021).

– as a new contractual agreement – to modify or replace a previous agreement between the parties. Under New Jersey law, which governs the interpretation of the consent judgment,[4] however, the consent judgment fails to modify the parties' previously-agreed-upon post-judgment interest rate or to replace their entire prior agreement.

The one-sentence consent judgment makes no mention of either the post-judgment interest rate or the parties' prior agreement setting that rate:

> This matter having been brought before the Court pursuant to a status conference; and the parties having amicably resolved the matter and consented to a judgment against defendants REMI Capital, Inc. and Erik A. Kaiser (collectively, "Defendants") in favor of

---

[4] As the forum state, New Jersey's choice-of-law rules determine which state's laws govern the interpretation of the consent judgment. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). New Jersey uses a most-significant-relationship test under which "the law of the place where the contract was made governs 'unless the dominant and significant relationship of another state to the parties and the underlying issues dictates otherwise.'" *N. Jersey Neurosurgical Assocs., P.A. ex rel. Gil v. Clarendon Nat'l Ins. Co.*, 949 A.2d 851, 856 (N.J. Super. Ct. App. Div. 2008) (alteration omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Est. of Simmons*, 417 A.2d 488, 493 (N.J. 1980)). Here, the consent judgment was negotiated by the parties and entered in New Jersey by the District Court, and no other state has a dominant and significant relationship to the consent judgment such that its law overcomes the application of New Jersey law.

Sovereign Bank ("Plaintiff"); and for good cause having been shown: It is on this 1st day of September 2010 ORDERED that judgment is entered jointly and severally against Defendants in the amount of $1,560,430.24.

Consent Judgment (Sept. 1, 2010) (JA11). Without any reference to post-judgment interest, the consent judgment does not evidence a "mutual and clear" intention to modify the contractual post-judgment interest rate. *County of Morris v. Fauver*, 707 A.2d 958, 967 (N.J. 1998); *see also Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 322 (3d Cir. 2006). Nor does the consent judgment provide so much as a hint that it fully and completely replaces the parties' prior agreement; it resolves only the amount of outstanding liability for loan obligations. Thus, the consent judgment does not contractually modify the agreed-upon post-judgment interest rate or fully replace the parties' prior agreement.

\* \* \*

A consent judgment is a duality of sorts: it is both a court order and a contract. But neither component of that judgment-contract duality supports the Majority Opinion's conclusion that this consent judgment replaces the parties' agreed-upon rate of post-judgment interest with the statutory default rate. The preclusive effect of judgments does not apply here because the parties' prior agreement on the post-judgment interest rate was not merged into the consent judgment. And under principles of contract law, the consent judgment does not provide any basis for modifying the parties' agreed-upon post-judgment interest rate or replacing their entire agreement. Consequently, appellant is entitled to post-judgment interest at

6

the rate set by the parties' agreement, not the default rate, and I would reverse the judgment of the District Court.