NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2165
_____

SECURITIES & EXCHANGE COMMISSION

v.

MICHAEL A. LIBERTY; KIERAN J. DALE; KEYSTONE V PARTNERS, L.P.;
KEYSTONE VENTURE MANAGEMENT HOLDINGS, INC.;
KEYSTONE V MANAGEMENT CO., INC.; JOHN R. REGAN; PETER E. LIGETI


Michael A. Liberty,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-06-cv-01030)
District Judge: Honorable Gerald A. McHugh
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 6, 2023

Before:  SHWARTZ, MATEY and FISHER, *Circuit Judges*.

(Filed: May 28, 2024)
_____

OPINION[*]
_____

_____

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

FISHER, *Circuit Judge*.

The Securities and Exchange Commission charged Michael Liberty with violating

several statutes by misappropriating millions of dollars from a private equity fund. The

charges were settled by the entry of a consent judgment. Later, the District Court found

Liberty in contempt of the judgment. The Court denied Liberty's motion under Federal

Rule of Civil Procedure 60(b) seeking relief from the contempt order. Then, over his

objections, it amended the judgment. Liberty appeals both decisions. For the reasons that

follow, we will affirm.[1]

I

Liberty argues the District Court erred in denying his motion filed pursuant to

Rule 60(b)(3) and 60(b)(6) seeking relief from the contempt order. He bore a "heavy

burden," as Rule 60(b) motions are a form of "extraordinary relief which should be

granted only where extraordinary justifying circumstances are present."[2] To prevail under

Rule 60(b)(3), Liberty must have established by "clear and convincing" evidence[3] that

the Commission "engaged in fraud or other misconduct, and that this conduct prevented

---

[1] The District Court had jurisdiction under 15 U.S.C. §§ 77v(a) (violations of the Securities Act of 1933), 78aa (violations of the Securities Exchange Act of 1934), and 80b-14 (violations of the Investment Advisers Act of 1940). We exercise appellate jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts).

[2] *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (quoting *Plisco v. Union R.R. Co.*, 379 F.2d 15, 16–17 (3d Cir. 1967)).

[3] *Brown v. Pa. R.R. Co.*, 282 F.2d 522, 527 (3d Cir. 1960).

[Liberty] from fully and fairly presenting his case."[4] Under Rule 60(b)(6), a catchall provision, Liberty was entitled to relief only under "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur."[5] We review a district court's denial of a Rule 60(b) motion for abuse of discretion.[6]

On appeal, Liberty again argues the Commission committed misconduct in receiving and handling material and testimony provided by Liberty's former business associate, James Stanley, as part of a separate and ongoing investigation in Maine involving another of Liberty's businesses.[7] Liberty asserts that Stanley produced documents protected by the attorney-client privilege, and the Commission's subsequent questioning of Stanley intruded into privileged subjects. The District Court provided three reasons for denying the Rule 60(b)(3) motion. Liberty attacks each one, but none of his arguments are persuasive.

*(1) Waiver.* First, the District Court held that Liberty waived any privilege by failing to timely challenge the use of the Stanley documents. Liberty argues the District Court erred in finding that he was aware the Commission possessed the documents in question, and that he therefore could not have waived any privilege. "In determining whether a party has waived the privilege through an inadvertent or involuntary

---

[4] *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983).
[5] *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993).
[6] *Sovereign Bank v. REMI Cap., Inc.*, 49 F.4th 360, 364 (3d Cir. 2022).
[7] *Sec. & Exch. Comm'n v. Liberty, et al.*, No. 2:18-cv-00139 (D. Me.).

disclosure, courts consider, among other factors, the steps taken by a party to remedy the disclosure and any delay in doing so."[8] The District Court carefully reviewed each instance where Liberty received information concerning the disclosures—in 2016, 2017, 2021, and 2022—and what he did in response. It concluded that even crediting "Liberty's most aggressive position" that he did not know about the disclosures until January 2022, he still failed to raise the issue before the entry of the contempt order in March 2022.[9] Another four weeks elapsed before Liberty filed his Rule 60(b) motion.

The fact that Liberty contacted the Commission in January 2022 concerning the documents does not alter the waiver analysis. We have held that "[m]erely asserting the privilege to an adversary is not sufficient"—rather, "judicial vindication" is required.[10] Liberty delayed seeking that vindication until after the District Court ruled on the contempt petition, and so it was well within the Court's discretion to find that Liberty waived any privilege.[11]

*(2) Misconduct.* Second, the District Court held that Liberty was unable to establish by clear and convincing evidence that the Commission engaged in any misconduct. Liberty argues the Commission improperly communicated *ex parte* with

---

[8] *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998).

[9] *Sec. & Exch. Comm'n v. Liberty*, No. CV 06-1030, 2022 WL 1664347, at *3 (E.D. Pa. May 25, 2022).

[10] *In re Grand Jury*, 138 F.3d at 982.

[11] *See id.* (affirming a district court's finding of waiver where the privilege holder waited nearly four months to seek judicial relief after learning that the government obtained allegedly privileged material from a third party).

Stanley, but the Commission was not required to notify Liberty about its communications with Stanley.[12] And Liberty has not established by clear and convincing evidence that the Commission "use[d] methods of obtaining evidence that violate [his] legal rights" as Stanley's former employer.[13] In fact, the only testimony from Stanley's deposition relied upon by the Commission was Stanley's non-privileged statement that Liberty instructed him not disclose the existence of Xanadu Partners, LLC.

Liberty also argues the Commission should have notified him that it received the documents and assembled a "filter team." But the Commission was not required to notify Liberty that it had received documents from Stanley in response to its subpoena.[14] And while the use of filter teams in *ex parte* proceedings is widely accepted,[15] the policy documents and cases on which Liberty relies address instances where the government expects to receive privileged material together with non-privileged material and will be responsible for "sift[ing] the wheat from the chaff."[16] Here, Stanley's counsel told the Commission that the potentially privileged documents had already been segregated.

---

[12] Pa. R. of Pro. Conduct 4.2 cmt.7 (explaining that consent of an organization's counsel is not required for communication with a former constituent represented by his or her own counsel).

[13] *Id.*

[14] Liberty relies on a rule that applies to documents inadvertently disclosed. Pa. R. of Pro. Conduct 4.4(b) & cmt.2. But Liberty does not assert that Stanley inadvertently produced these documents to the Commission. Even if Rule 4.4(b) applied, however, the Commission's obligation would only be to notify the sender (i.e., Stanley), not Liberty.

[15] *United States v. Scarfo*, 41 F.4th 136, 173 (3d Cir. 2022).

[16] *Id.* (quoting *In re Grand Jury Subpoenas*, 454 F.3d 511, 522–23 (6th Cir. 2006)).

Liberty offers no authority that would require the Commission to second guess that representation.

Further, it was well within the District Court's discretion to credit the assertion of the Commission's counsel—an officer of the court—that upon receipt of the Stanley production, the Commission promptly segregated the potentially privileged documents and did not review them. Liberty's contention that some higher order of proof is required is baseless, particularly where he has the burden of establishing misconduct.

Finally, Liberty contends the Commission engaged in discovery misconduct by not timely producing the Stanley documents in this matter. "Failure to disclose or produce evidence requested in discovery can," but does not necessarily, "constitute Rule 60(b)(3) misconduct."[17] Where—as here—the Commission objected to Liberty's request for production and Liberty did not move to compel production over the stated objections, we cannot conclude that the Commission's resistance to producing these documents constitutes clear and convincing evidence of discovery misconduct.[18]

*(3) Prejudice.* The District Court concluded that Liberty failed to establish that the alleged misconduct prejudiced him or frustrated his ability to present his defense. This holding follows naturally from Liberty's waiver and inability to show misconduct by the Commission. But even assuming misconduct occurred, Liberty has not identified a single

---

[17] *Stridiron*, 698 F.2d at 207.
[18] *See Pierce v. City of Phila.*, 391 F. Supp. 3d 419, 448 n.20 (E.D. Pa. 2019).

privileged document or other evidence used by the Commission in the contempt proceedings, or how such evidence would have prevented him from showing that he did not misrepresent his assets. The District Court properly exercised its discretion in denying Liberty relief under Rule 60(b)(3).

Liberty argues that the District Court abused its discretion in denying relief under Rule 60(b)(6) as well. But no extreme or unexpected hardship occurred as a result of the contempt holding, so Rule 60(b)(6) affords him no relief. The District Court therefore did not err in denying Liberty's motion for relief under Rule 60(b).

## II

Liberty also challenges the Court's amendment of the final judgment, which precludes him from seeking an offset against the approximately $4 million civil penalty as a result of any compensatory damages for which he might be found liable in private litigation. The Commission responds that, while the offset provision may not have been included in the original final judgment, the amendment is nevertheless justified. It reasons—as did the District Court—that such terms needn't have been included in the original judgment in light of the civil penalty's initial suspension. The original judgment explained that "[t]he determination not to impose a civil penalty . . . is contingent upon the accuracy and completeness of [Liberty's] financial Declaration."[19]

---

[19] Appx. 148.

7

But the District Court found that Liberty's financial representations "were, at best, misleading and incomplete" and it held Liberty in contempt on that basis.[20] In amending the final judgment to reflect that Liberty was now obligated to pay the civil penalty, the District Court "set out more specific administrative and legal terms and conditions related to how the monies owed are to be enforced, paid, and disbursed."[21] We review a district court's decision to modify a consent judgment for abuse of discretion.[22] The scope of the Court's inherent powers, however, is a question of law we review de novo.[23]

The District Court relied upon cases that speak broadly to a court's equitable power to fashion appropriate remedies.[24] Those cases provide less guidance, however, on the operative question here: whether the District Court was empowered to amend an existing consent judgment agreed to by the parties. Liberty urges us to apply the principles laid out in *Sovereign Bank v. REMI Capital, Inc.*[25] But that case is distinguishable: it addressed whether a district court could modify a consent judgment to include a contractual term agreed to by the parties prior to any dispute but entirely

---

[20] *Sec. & Exch. Comm'n v. Liberty*, 589 F. Supp. 3d 469, 486, 493 (E.D. Pa. 2022).

[21] *Sec. & Exch. Comm'n v. Liberty*, No. CV 06-1030, 2022 WL 1664346, at *1 (E.D. Pa. May 25, 2022).

[22] *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 281 (3d Cir. 2001).

[23] *Id.*

[24] *Sec. & Exch. Comm'n v. Invs. Sec. Corp.*, 560 F.2d 561, 567 (3d Cir. 1977); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391 (1970).

[25] 49 F.4th at 367 ("The parties agreed to entry of the Consent Judgment, and we are bound to interpret it within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.") (internal quotation marks and citation omitted).

8

omitted from the judgment.[26] The Commission's request to amend the final judgment here concerns, not an omitted term, but the Court's power to fashion remedies consistent with the existing terms of the consent judgment in light of Liberty's non-compliance.

This case is more akin to *Holland v. New Jersey Department of Corrections*.[27] There, we explained that a district court possesses the inherent power to modify a consent decree or judgment "upon making a finding that conditions have changed so that the basic purpose of the original consent decree has been thwarted, meaning that time and experience have demonstrated that the decree has failed to accomplish the result that it was specifically designed to achieve."[28] The District Court here made extensive factual findings that, in light of the Commission's discovery of Liberty's ability to pay, conditions had changed. In amending the final judgment, the District Court required Liberty to pay the full civil penalty, thereby ensuring that the judgment achieved the

---

[26] *Id.* at 362–68.

[27] 246 F.3d at 281–88 (addressing a district court's authority to modify or enforce compliance with a consent decree or judgment).

[28] *Id.* at 283 (internal citations, quotation marks, and alterations omitted); *see also Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992) (holding that a consent decree may properly be modified in the face of "changed factual conditions"). While *Holland* and *Rufo* arose in the institutional reform context, their reasoning and articulation of the requirements for amending a consent decree extend beyond issues of civil rights. *See Bldg. & Const. Trades Council of Phila. & Vicinity, AFL-CIO v. N.L.R.B.*, 64 F.3d 880, 886–87 (3d Cir. 1995) (holding that *Rufo*'s statement as to a court's ability to modify a decree is a rule of general applicability and not limited to institutional reform litigation).

intended result agreed to by both parties in the original judgment.[29] The Court tailored its modification of the final judgment directly in response to the changed conditions regarding Liberty's ability to pay, and ensured that the remedy sought by the original final judgment could be accomplished. The Court therefore did not err in granting the Commission's motion to amend the final judgment.

III

For these reasons, we will affirm.

---

[29] *See United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 252 (1968) ("[T]he District Court should modify the decree so as to achieve the required result . . . ."); *see also Rufo*, 502 U.S. at 391 (requiring the modification to be "tailored to resolve the problems created by the change in circumstances"); *United States v. Loc. 560 (I.B.T.)*, 974 F.2d 315, 333 (3d Cir. 1992) (holding that modification of a consent decree is appropriate when "necessary to accomplish the remedy sought by the original equitable decree").

MATEY, *Circuit Judge*, concurring in part and dissenting in part.

I agree with the majority's denial of Liberty's motion, but do not see authority for adding a new term into the parties' consent judgment. A federal court can modify a consent judgment as specified in the agreement, by party motion under Federal Rule of Civil Procedure Rule 60(b),[1] or through the exercise of the court's inherent equitable power.[2] But the Commission did not invoke an existing term of the judgment, nor move under Rule 60(b),[3] so we are left with only the District Court's equitable authority to support its order. *See* Majority Op. at 8–9.

That inherent power "is never without limits," *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 648 (1961), and any modification must "serve[] to effectuate . . . the basic purpose of the original consent [judgment]," *Chrysler Corp. v. United States*, 316 U.S. 556, 562 (1942) (citing *United States v. Swift & Co.*, 286 U.S. 106 (1932) (Cardozo, J.)). Often, that turns on whether "the circumstances, whether of law or fact, obtaining at the time of [the consent judgment's] issuance have changed, or

---

[1] The Rule allows a party to seek relief from a "final judgment, order, or proceeding" when, as relevant here, "applying [the judgment] prospectively is no longer equitable . . ." Fed. R. Civ. P. 60(b)(5); 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 2852, 2863 (3d ed. updated 2023) (recognizing Rule 60(b)(5) applies to consent judgments); *see also Horne v. Flores*, 557 U.S. 433, 447–48 (2009).

[2] *See Firefighters Loc. Union No. 1784 v. Stotts*, 467 U.S. 561, 572–77 (1984); *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 646–47 (1961) (citing *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) (Cardozo, J.)); *Frew v. Hawkins*, 540 U.S. 431, 441 (2004); *Chrysler Corp. v. United States*, 316 U.S. 556, 562 (1942); *U.S. v. United Shoe Mach. Corp.*, 391 U.S. 244, 249 (1968); *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2961 (3d ed. updated 2023).

[3] Though it could have, *see supra* at notes 1–2.

1

new ones have since arisen." *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO*, 364 U.S. at

647. Those unforeseen events might well occasion a narrow alteration in the terms,

conditions, or remedies. But a consent judgment is still a "hybrid" creature of contract,

*Loc. No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S.

501, 519 (1986), so the scope "must be discerned within its four corners . . . . [b]ecause

the defendant has, by the decree, waived the right to litigate the issues raised . . . the

conditions upon which he has given that waiver must be respected, and the instrument

must be construed as it is written," *United States v. Armour & Co.*, 402 U.S. 673, 682

(1971). On all this, I agree with the majority.

We part on how to characterize what the SEC sought, and the District Court

awarded. Is it a new obligation or merely a remedy for the violation of a term already

accepted? The consent judgment authorized two steps if Liberty lied about his finances:

reinstatement of the full disgorgement amount and imposition of the maximum civil

penalty. *See* App. 148. After the deal was done, the SEC asked for a third: barring Liberty

from offsetting the amount due to the Commission with the roughly $4 million civil

damages assessed in other actions. *See* App. 2303–10; App. 50–59. That request helps the

Commission to capture every dollar it believes due. But characterizing that as a remedy,

rather than an attempt to add an additional term the SEC did not think to include,

stretches decisions detailing a district court's equitable power. The broadest allowance of

that power comes in civil rights cases when modification can help alleviate past structural

wrongs. *See Spallone v. United States*, 493 U.S. 265, 276 (1990) ("[T]he [district] court

has an additional basis for the exercise of broad equitable powers" when its "order is

2

necessary to remedy past discrimination"); *Holland v. New Jersey Department of Corrections*, 246 F.3d 267, 282 (3d Cir. 2001) ("It is well-settled that a court has broad equitable power to fashion a remedy while modifying a consent decree, and has similarly broad equitable power when enforcing compliance with a decree if the decree is aimed at remedying discrimination").

That is not the case here. The Commission seeks more money, or at least a surer way to collect what it is owed. Extending *Holland*'s reach from civil rights to civil securities[4] risks removing the carefully curated limits on equity we recently reaffirmed. *See Sovereign Bank v. REMI Capital, Inc.*, 49 F.4th 360, 367–68 (3d Cir. 2022). That caution is particularly relevant here where one of the parties is not simply sophisticated, but the sovereign seeking to deprive property.

---

[4] The majority cites *Bldg. & Const. Trades Council of Phila. & Vicinity, AFL-CIO v. N.L.R.B.*, 64 F.3d 880, 886–87 (3d Cir. 1995) for the proposition that "a court's ability to modify a [consent] decree," as announced in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 391 (1992), "is a rule of general applicability and not limited to institutional reform litigation." Majority Op. at 9 n.28. But *Bldg. & Const. Trades Council* considered a narrow question: how to evaluate a motion to vacate a consent judgment's prospective application. *See* 64 F.3d at 884. We explained that Rule 60(b)(5) provides the standard: whether "it is no longer equitable that the judgment should have prospective application." *Id.* at 888 (quoting Fed. R. Civ. P. 60(b)(5)); *cf. Favia v. Indiana U. of Pennsylvania*, 7 F.3d 332, 341 n.15 (3d Cir. 1993) (recognizing that the Supreme Court had "specifically limited [*Rufo*'s] holding"—that a more flexible standard applies for the modification of consent judgments—"to the institutional reform setting"). Here, we deal with the addition of a new duty to perform, not enlargement of the time to comply with previously specified duties.

\* \* \*

Federal courts cannot draw upon a bottomless well of equitable power to modify consent judgments. For that reason, I would reverse the District Court's order and so respectfully dissent.